# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-018

Filing Date:    April 22, 2009

Docket No. 30,620


STATE OF NEW MEXICO,

　　　Plaintiff-Petitioner,

v.

STEPHEN NOZIE,

　　　Defendant-Respondent.


ORIGINAL PROCEEDINGS ON CERTIORARI
Grant L. Foutz, District Judge


Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Plaintiff

Hugh W. Dangler, Chief Public Defender
Navin H. Jayaram, Assistant Appellate Defender
Santa Fe, NM

for Defendant

## OPINION

**MAES, Justice.**

**{1}** In this appeal, we address whether knowledge of the victim's identity as a peace officer is an essential element of the crime of aggravated battery upon a peace officer, which the State bears the burden to prove beyond a reasonable doubt. Following a jury trial, Stephen Nozie (Defendant) was convicted of aggravated battery upon a peace officer, contrary to NMSA 1978, Section 30-22-25(B) (1971), criminal damage to property, contrary

1

to NMSA 1978, Section 30-15-1 (1963), and battery in violation of NMSA 1978, Section 30-3-4 (1963).  On appeal, Defendant challenged only his conviction of aggravated battery upon a peace officer, claiming, in relevant part, that the trial court improperly denied his request to issue jury instructions regarding mistake of fact as to the victim's identity as a peace officer, UJI 14-2216 NMRA, and battery, UJI 14-320 NMRA, as a lesser-included offense of aggravated battery upon a peace officer.  *State v. Nozie*, 2007-NMCA-131, ¶¶ 1, 12, 142 N.M. 626, 168 P.3d 756.  The Court of Appeals determined that, pursuant to *Reese v. State*, 106 N.M. 498, 745 P.2d 1146, *on reh'g*, 106 N.M. 505, 745 P.2d 1153 (1987), Defendant was entitled to a jury instruction in accordance with UJI 14-2216 because a question of fact existed with respect to whether Defendant knew the victim was a peace officer.  *Nozie*, 2007-NMCA-131, ¶¶ 6, 10.  Likewise, the Court concluded that Defendant was entitled to a jury instruction on battery as a lesser- included offense of aggravated battery upon a peace officer.  *Id.* ¶ 12.  We affirm based on our clarification of the legal principles announced in *Reese*.

## I.      FACTS AND PROCEDURAL HISTORY

{2}      The jury reasonably could have found the following facts.  Defendant and his wife, Philipita, had been drinking heavily throughout the day and early evening of March 18, 2003.  At approximately 8:15 p.m., they drove to the Safeway grocery store located in Gallup where they picked up Philipita's sister, Oleta Kinsel.   Defendant, Philipita, and Kinsel went to a bar located in town, but were forced to leave after only fifteen minutes because Defendant and Philipita were arguing.  As Kinsel was driving home, Defendant and Philipita continued to argue.  Their argument turned violent, and Defendant struck Philipita in the head with a bottle of alcohol.  Kinsel pulled into a nearby parking lot, and Philipita ran out of the car to summon emergency assistance.  When Philipita returned to the parking lot, she and Defendant continued to fight, both physically and verbally.  Philipita managed to escape from Defendant and locked herself in the car with Kinsel.  Undeterred, Defendant broke the rear window of Kinsel's car and crawled inside.

{3}      At this point, Kinsel decided to drive back to Safeway because she knew that it had a security guard on duty.  Upon arriving at Safeway, Kinsel went inside to summon the security guard while Defendant and Philipita continued to fight outside in the parking lot.  The security guard, Eric Loera, who was wearing black pants and a gray shirt, with a badge and patches identifying him as a private security guard, went outside to the parking lot to investigate.  Loera attempted to calm Defendant, who was chasing Philipita around the parking lot, and informed Defendant that the police were on their way.  Defendant began to walk away, but then suddenly turned around, grabbed Leora's shirt, and attempted to throw him to the ground.  A struggle ensued, during which Leora subdued Defendant by pulling him to the ground and striking him three or four times.  While Defendant was on the ground, Kinsel and Philipita kicked him repeatedly until Leora forced them to stop.  Afterward, Defendant got up and walked toward a vacant parking lot across the street.

2

**{4}** At this point, the victim, Lieutenant Craig Meo of the Gallup Police Department, arrived at the Safeway parking lot. The lieutenant was wearing a police uniform, which consisted of black pants and a black jacket with insignia on the shoulders identifying him as a police officer. The lieutenant spoke briefly to Leora, who pointed out Defendant's location.

**{5}** Lieutenant Meo drove across the street to the vacant parking lot and parked his vehicle by the side of the road. He did not activate his police siren or emergency lights because he did not want to startle Defendant, or cause him to flee. The lieutenant exited his vehicle, turned off his two-way radio, and followed Defendant on foot. When the lieutenant and Defendant were approximately ten to fifteen feet apart, Defendant suddenly turned around and faced the lieutenant with clenched fists. Upon seeing the lieutenant, however, Defendant visibly relaxed. The lieutenant gestured to Defendant to follow him back to the parking lot, and Defendant complied.

**{6}** While walking side-by-side back to the parking lot, Defendant suddenly struck Lieutenant Meo in the left eye, causing a laceration that bled profusely. As the lieutenant was trying to wipe the blood out of his eyes to clear his vision, Defendant struck him a second time. The lieutenant attempted to defend himself by hitting Defendant in the head with a flashlight. He landed the blow, but lost his footing, falling to the ground. Defendant fell on top of the lieutenant and proceeded to head-butt him three times in quick succession, causing severe physical injuries, including a nasal fracture and broken teeth. Unable to defend himself and fearing for his life, the lieutenant drew his service weapon and shot Defendant in the chest.

**{7}** At no point during his interaction with Defendant did Lieutenant Meo verbally identify himself as a police officer. Instead, he relied on his uniform to provide Defendant with visual confirmation of his identity as a police officer, as was his practice and custom.

**{8}** Defendant subsequently was transported to the hospital where his gunshot wound was treated, and a blood alcohol content test was administered at 10:57 p.m. Defendant's blood alcohol content was .289, which an expert witness described as "black out" level. Additionally, a blood test revealed that Defendant was hyperglycemic, meaning that he had an excess amount of sugar in his blood, which can cause wooziness, blurred vision, and an inability to concentrate.

**{9}** Defendant was charged in an amended four-count information with (1) aggravated battery upon a peace officer, Lieutenant Meo, contrary to Section 30-22-25(B); (2) aggravated battery upon a household member, Philipita, contrary to NMSA 1978, Section 30-3-16(A), (C) (1995, prior to amendments through 2008); (3) criminal damage to property, the rear window of Kinsel's car, contrary to Section 30-15-1; and (4) battery of Leora, contrary to Section 30-3-4. Prior to trial, the State filed a nolle prosequi with respect to Count Two of the information, aggravated battery of a household member, citing "[u]navailability of witness" as the grounds therefor.

3

**{10}** At the close of evidence, both parties submitted their requests for jury instructions. Defendant asked the trial court to instruct the jury in accordance with UJI 14-2216 and submitted the following instruction:

> Evidence has been presented that the Defendant did not know that Craig Meo, Sr. was a Peace Officer.
>
> The burden is on the State to prove beyond a reasonable doubt that the Defendant knew that Craig Meo, Sr. was a Peace Officer. If you have reasonable doubt as to whether the Defendant knew that Craig Meo, Sr. was a Peace Officer, you must find the Defendant not guilty of the crime of Aggravated Battery Upon a Peace Officer.

The State objected, arguing that no affirmative evidence had been presented to establish that Defendant did not know that Lieutenant Meo was a peace officer. The trial court agreed, noting that none of the witnesses had testified with respect to Defendant's alleged lack of knowledge. Accordingly, the trial court refused to issue the requested instruction.

**{11}** Defendant also asked the trial court to instruct the jury on the essential elements of battery in accordance with UJI 14-320, claiming that, under the circumstances of the present case, battery is a lesser-included offense of aggravated battery upon a peace officer. The State objected, arguing that battery is not a lesser-included offense of aggravated battery upon a peace officer. The trial court agreed and refused to issue the requested instruction.

**{12}** The jury found Defendant guilty of the crimes charged, and the trial court rendered judgment consistent with the jury's verdict. Additionally, the trial court found Defendant guilty of being a habitual offender, contrary to NMSA 1978, Section 31-18-17(B) (2002, as amended), and enhanced Defendant's sentence accordingly.

**{13}** Defendant appealed from the judgment of the trial court to the Court of Appeals, claiming, in relevant part, that the trial court improperly declined to issue the requested jury instructions. The Court concluded that substantial evidence existed to support Defendant's claim that he had no knowledge of Lieutenant Meo's identity as a peace officer and, therefore, pursuant to *Reese*, Defendant was entitled to the issuance of UJI 14-2216. *Nozie*, 2007-NMCA-131, ¶ 6. The Court also concluded that Defendant was entitled to an instruction on battery, UJI 14-320, as a lesser-included offense of aggravated battery upon a peace officer because "[i]f the jury found both that Defendant was mistaken as to the victim's status as a peace officer and that Defendant was unable to form the specific intent to injure, it could have found Defendant guilty of battery." *Id.* ¶ 12. Accordingly, the Court vacated Defendant's conviction of aggravated battery upon a peace officer and remanded the case to the trial court for a new trial wherein the jury is properly instructed. *Id.* ¶ 15.

**{14}** We granted the State's petition for writ of certiorari to determine whether (1) the Court of Appeals improperly failed to observe Rule 12-213(A) NMRA by resolving

Defendant's instructional claim on the basis of *Reese*, and (2) Defendant's subjective knowledge of the victim's identity as a peace officer is an essential element of the crime of aggravated battery upon a peace officer, which the State bears the burden to prove beyond a reasonable doubt. *State v. Nozie*, 2007-NMCERT-009, 142 N.M. 716, 169 P.3d 409.

## II.   DISCUSSION

### A.   Whether the Court of Appeals violated Rule 12-213(A).

**{15}**   Rule 12-213(A)(4) provides that the argument section of an appellant's brief-in-chief must include, inter alia, "citations to authorities." As we previously have observed, an appellate court is not required to

> review issues raised in appellate briefs that are unsupported by cited authority. When a criminal conviction is being challenged, counsel should properly present [the reviewing] court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure.

*State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (citations omitted). "Where defendants have failed to comply with [Rule 12-213], . . . an appellate court may decline to address such contention on appeal." *State v. Goss*, 111 N.M. 530, 533, 807 P.2d 228, 231 (Ct. App. 1991) (footnote omitted). Although an appellate court may decline to address such a claim, it is not required to do so if the "transcripts and briefs . . . are sufficient to present the essential question for review on the merits, notwithstanding a technical violation of our rules." *Huckins v. Ritter*, 99 N.M. 560, 561, 661 P.2d 52, 53 (1983); *accord State v. Martinez*, 1996-NMCA-109, ¶ 13, 122 N.M. 476, 927 P.2d 31 ("NMRA 12-213 . . . does not require this Court to disregard an issue when an appellant fails to comply with its provisions.").

**{16}**   The State claims that the Court of Appeals improperly failed to observe Rule 12-213(A)(4) by resolving Defendant's instructional claim regarding UJI 14-2216 on the basis of *Reese* because the argument section of Defendant's brief-in-chief failed to cite *Reese* or any other pertinent authority. Essentially, the State argues that "Defendant waived any argument based on *Reese*" and the Court of Appeals improperly made an "unmade argument . . . the basis of [its] Opinion." Assuming without deciding that a technical violation of Rule 12-213(A)(4) occurred, our review of Defendant's brief-in-chief nonetheless reveals that Defendant's claim was sufficiently briefed to permit the Court of Appeals to review the essential question on its merits. Defendant explicitly argued that his

> tendered instructions should have been given to the jury and the trial court's refusal to do so constituted a deprivation of his right to have the jury fully informed of the State's burden to prove each and every element of the crime

alleged, thus denying him his right to due process of law as guaranteed by the United States Constitution, art. XIV as interpreted by [*Reese*].

Accordingly, we conclude that the Court of Appeals did not abuse its discretion by addressing the merits of Defendant's claim.

**B.      Whether Defendant's knowledge of the victim's identity as a peace officer is an essential element of the crime of aggravated battery upon a peace officer.**

**{17}**    The State next claims that the Court of Appeals improperly concluded that Defendant's knowledge of the victim's identity as a peace officer is an essential element of the crime of aggravated battery upon a peace officer, which the State bears the burden to prove beyond a reasonable doubt.  Specifically, the State claims that the plain language of Section 30-22-25 requires only one mental state, intent to injure, and, therefore, "[i]t is not for the Court of Appeals to rewrite the statute to add a new [mental state]."

**{18}**    We begin our analysis of the State's claim with *Rutledge v. Fort*, 104 N.M. 7, 715 P.2d 455 (1986), wherein a majority of this Court concluded that the plain language of the statutes prohibiting aggravated assault upon a peace officer, NMSA 1978, Section 30-22-22 (1971), and battery upon a peace officer, NMSA 1978, Section 30-22-24 (1971), reflect the Legislature's intent "not to make knowledge that the victim was a peace officer a required element" of those crimes. *Rutledge*, 104 N.M. at 9, 715 P.2d at 457.  This conclusion was "strengthened by the fact that the United States Supreme Court, analyzing a similar federal statute proscribing assaults upon federal officers, 18 U.S.C. § 111 (1970), determined that the statute required only an intent to assault, not an intent to assault someone known to be a federal officer." *Id.* (citing *United States v. Feola*, 420 U.S. 671, 684 (1975)).  "We [concluded] that our Legislature, like Congress, meant to extend maximum protection to peace officers, and did not intend to undercut that protection by imposing an unexpressed requirement of knowledge that the victim was a peace officer." *Id.*

6

**{19}** In *Reese*,[1] a plurality of this Court reconsidered and overruled *Rutledge* "insofar as it [had held] that a defendant's knowledge as to the identity of the peace officer assaulted is not a necessary element of the crimes." *Reese*, 106 N.M. at 499, 745 P.2d at 1147. Justice Sosa, author of the lead opinion, which was joined by Justice Walters, acknowledged that the statutes prohibiting aggravated assault upon a peace officer and battery upon a peace officer "do not require knowledge of the victim's identity," but nonetheless concluded that "scienter is a necessary element of these crimes, and thus indispensable to the jury's consideration of the case." *Id*. The lead opinion predicated its conclusion "not on [its] reading of the pertinent statutes, but on requirements of constitutionally mandated due process." *Id.*

**{20}** Justice Ransom published a specially concurring opinion wherein he agreed with Justices Sosa and Walters that scienter is an element of the crimes, but disagreed that it was necessary to decide the case on constitutional grounds. *Id.* at 501, 745 P.2d at 1149.

---

[1]We note that both *Reese* and *Rutledge* arose out of the same criminal prosecution. At the defendant's first trial, the trial court instructed the jury "that they must find that the defendant had been on notice that the victim was a police officer in order to convict." *Rutledge*, 104 N.M. at 8, 715 P.2d at 456. The jury was unable to reach a verdict, resulting in a mistrial. *Id.* Prior to retrial, the trial court "denied the State's motion to conform instructions to the uniform jury instructions, and stated its intention to give the additional element instruction requiring a finding of knowledge to the second jury." *Id.* In response, the State filed a writ for superintending control in this Court, seeking to restrain and prohibit the trial court from issuing the challenged instruction. *Id.* In *Rutledge*, this Court granted the writ. *Id.* at 10, 715 P.2d at 458.

A second trial followed, in which the defendant was found guilty of the crimes charged. *Reese*, 106 N.M. at 498, 745 P.2d at 1146. The defendant appealed, and, in *Reese*, we overruled *Rutledge* and reversed the defendant's conviction. *Id.* at 499, 745 P.2d at 1147. Thereafter, we granted the State's motion for rehearing to address the State's claim that the law of the case doctrine precluded us from "reaching a result on appeal that differs from the result we initially reached when granting the writ of superintending control." *Reese v. State*, 106 N.M. 505, 506, 745 P.2d 1153, 1154 (1987). We explained that we had "issued our opinion without realizing that the case we were deciding [(*Reese*)] was in fact the same case as to [*Rutledge*]." *Id.* Nonetheless, we affirmed our holding in *Reese*, concluding that

> to deny [the defendant] the right to have the jury informed as to his apprehension of the identity of the person he assaulted would be to deny him the right to have the jury apprised of a necessary element of the crime for which he was charged, and that in turn would be to deny [the defendant] his constitutional guarantee of due process of law.

*Id.* at 507, 745 P.2d at 1155.

Instead, Justice Ransom applied well established tools of statutory construction and the principle that "the existence of a criminal intent is essential absent the appearance of legislative intent to the contrary" to conclude that the Legislature intended a defendant's knowledge of the victim's identity as a peace officer to be an essential element of the crimes. *Id.* Justice Ransom therefore would have reversed the defendant's convictions on statutory, rather than on constitutional, grounds.

**{21}** Chief Justice Scarborough and Justice Stowers each published dissenting opinions. *Id.* at 503-05, 745 P.2d at 1151-53. Chief Justice Scarborough criticized the plurality for "ignor[ing] the clear and unambiguous language of the statutes by holding that a defendant must have specific intent to commit aggravated assault or battery upon a peace officer." *Id.* at 503, 745 P.2d at 1151. He further criticized Justices Sosa and Walters for predicating their conclusion on constitutional grounds, noting that "[w]e are not dealing with an issue of constitutional dimension, but rather with a matter of state policy." *Id.* Justice Stowers agreed, explaining:

> Like the statutory rape statutes, our statutes regarding battery and assault upon a peace officer by their plain language do not require proof of an additional element of knowledge. These latter statutes meet the clear legislative intention to protect peace officers performing their duties and do not violate any constitutional rights of the defendant. *Rutledge v. Fort* correctly interpreted these statutes and should not be overruled.
> *Id.* at 505, 745 P.2d at 1153.

**{22}** Although *Reese* was a plurality opinion, this Court repeatedly has cited its holding with approval. *See, e.g.*, *State v. Ellis*, 2008-NMSC-032, ¶ 17 n.1, 144 N.M. 253, 186 P.3d 245; *State v. Padilla*, 2008-NMSC-006, ¶ 16, 143 N.M. 310, 176 P.3d 299; *Santillanes v. State*, 115 N.M. 215, 223, 849 P.2d 358, 366 (1993). It is now well established that "with respect to aggravated assault on a peace officer . . . a defendant's knowledge about the identity of an officer is an element of the crime that the State is required to prove beyond a reasonable doubt." *Ellis*, 2008-NMSC-032, ¶ 17 n.1; *see also Padilla*, 2008-NMSC-006, ¶ 16 (citing *Reese* for the proposition that "a defendant's knowledge of the peace officer's identity is a necessary element of the crime" of aggravated assault of a peace officer); *Perez v. State*, 111 N.M. 160, 163, 803 P.2d 249, 251 (1990) (citing *Reese* for the proposition that a "defendant's knowledge of [the] victim's identity [is an essential] element of [the] offense of assault on a peace officer"); *State v. Trevino*, 113 N.M. 804, 812, 833 P.2d 1170, 1178 (Ct. App. 1991) (noting that under *Reese* "knowledge that the victim is a peace officer constitutes an element of peace officer assault and battery"). *But see State v. Hilliard*, 107 N.M. 506, 508-09, 760 P.2d 799, 801-02 (Ct. App. 1988) (holding that a defendant's knowledge of the victim's identity is not an essential element of the crime of battery upon a peace officer, but, rather, an affirmative defense to culpability).

8

**{23}** The State claims, however, that *Reese* is not binding authority because it "contained only minority opinions, and it is established New Mexico law that an opinion joined by fewer than three justices is not the opinion of this Court." Although *Reese* was a plurality opinion, a majority of the Court, namely, Justices Sosa, Walters, and Ransom, all agreed that a defendant's knowledge of the victim's identity as a peace officer is an essential element of the crimes, which the State must prove beyond a reasonable doubt. They could not agree, however, as to the legal basis for their conclusion, i.e., whether the element of scienter was constitutionally or statutorily mandated. We therefore take this opportunity to review the principles articulated in *Reese* and clarify the legal basis for this Court's holding.

**{24}** In *Reese*, Justices Sosa and Walters relied on the rule announced by the United States Supreme Court in *United States v. Feola*, 420 U.S. 671 (1975), to support their conclusion that the element of scienter was constitutionally mandated. *See Reese*, 106 N.M. at 499, 745 P.2d at 1147. *Feola*, however, was not based on the due process clause of the federal constitution. Instead, the Court examined congressional intent, as manifested by the language, history, and purpose of 18 U.S.C. § 111 (1948), which prohibits assaults on federal officers, to determine whether knowledge of the victim's identity as a peace officer was an essential element of the crime. *See Feola*, 420 U.S. at 678-84. Likewise, the state cases on which the lead opinion relied did not hold that knowledge of the victim's identity as a peace officer was constitutionally mandated, but, rather, analyzed their respective state statutes to ascertain whether the legislature intended the statute to encompass a knowledge requirement. *See, e.g.*, *State v. Morey*, 427 A.2d 479, 483-84 (Me. 1981); *Dotson v. State*, 358 So. 2d 1321, 1322 (Miss. 1978); *Celmer v. Quarberg*, 203 N.W.2d 45, 50 (Wis. 1973). Accordingly, we disagree with Justices Sosa and Walters that the Constitution requires knowledge of the victim's identity to be an essential element of these crimes, regardless of legislative intent to the contrary. *See Lambert v. California*, 355 U.S. 225, 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."); *State v. Lucero*, 98 N.M. 204, 206, 647 P.2d 406, 408 (1982) ("[T]he Legislature may forbid the doing of an act and make its commission criminal without regard to the intent of the wrongdoer.").

**{25}** We therefore turn to Justice Ransom's specially concurring opinion. Justice Ransom noted that it is "the rule in New Mexico . . . that where an act is prohibited and made punishable by statute, the statute must be construed in the light of the common law, and the existence of a criminal intent is essential absent the appearance of legislative intent to the contrary." *Reese*, 106 N.M. at 501, 745 P.2d at 1149. Additionally, Justice Ransom observed that in the absence of a specified mental state, the following factors should be considered in deciding whether the legislature meant to impose liability without fault:

> (1) The legislative history of the statute or its title or context may throw some light on the matter. (2) The legislature may have in some other statute provided guidance as to how a court is to determine whether strict liability was intended. (3) The severity of the punishment provided for the crime is

9

of importance. Other things being equal, the greater the possible punishment, the more likely some fault is required, and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault. (4) The seriousness of harm to the public which may be expected to follow from the forbidden conduct is another factor. Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa. (5) The defendant's opportunity to ascertain the true facts is yet another factor which may be important in determining whether the legislature really meant to impose liability on one who was without fault because he lacked knowledge of these facts. The harder to find out the truth, the more likely the legislature meant to require fault in not knowing; the easier to ascertain the truth, the more likely failure to know is no excuse. (6) The difficulty prosecuting officials would have in proving a mental state for this type of crime. The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced. (7) The number of prosecutions to be expected is another factor of some importance. The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault; the greater the number of prosecutions, the more likely the legislature meant to impose liability without regard to fault. All the above factors have a bearing on the question of the interpretation of the empty statute, but no single factor can be said to be controlling. Thus some statutes have been held to impose liability without fault although the possible punishment was quite severe, generally because one or more of the other factors pointed toward strict liability.

*Id.* at 502-03, 745 P.2d at 1150-51 (quoting W. La Fave & A. Scott, *Criminal Law* § 5.1 (2d ed. 1986)). Justice Ransom determined that "[a]lthough one or more of the above factors arguably may support an interpretation of the statute in question as requiring no mental element of knowledge, taken as a whole the factors do not lead to a construction that the [L]egislature clearly intended to punish without knowledge." *Id.* at 503, 745 P.2d at 1151.

**{26}** We agree with Justice Ransom that it is appropriate to resolve the question of knowledge on the basis of legislative intent. "When a criminal statute is silent about whether a *mens rea* element is required, we do not assume that the [L]egislature intended to enact a no-fault or strict liability crime." *Santillanes*, 115 N.M. at 218, 849 P.2d at 361. "Instead, it is well settled that we presume criminal intent is an essential element of the crime unless it is clear from the statute that the [L]egislature intended to omit the *mens rea* element." *Id.* As Justice Ransom pointed out, "[i]n these criminal statutes, there is no language negating a mental state." *Reese*, 106 N.M. at 502, 745 P.2d at 1150. Additionally, the punishment for both offenses is severe: aggravated assault upon a peace officer is a third degree felony, which carries a basic sentence of three years imprisonment, and battery upon a peace officer

10

is a fourth degree felony, which carries a basic sentence of eighteen months imprisonment. *See* NMSA 1978, § 31-18-15(A)(9)-(10) (1977, as amended). Thus, these crimes are distinguishable from strict liability or "public welfare crimes" to which no "moral condemnation and social opprobrium" typically attach and for which the penalties are "relatively slight." *Santillanes*, 115 N.M. at 222, 849 P.2d at 365; *see also State v. Yarborough*, 1996-NMSC-068, ¶ 19, 122 N.M. 596, 930 P.2d 131 ("We must be sure that the penalties associated with a felony conviction are imposed only in response to an act done with at least the minimum culpable state of mind."); *State v. Gonzalez*, 2005-NMCA-031, ¶ 14, 137 N.M. 107, 107 P.3d 547 ("Strict liability crimes are the exception. They are generally recognized under statutes in the nature of regulatory measures and designed to proscribe conduct which seriously threatens public health or safety."). Therefore, we hold that the Legislature did not intend for punishment to be imposed without knowledge of the victim's status as a peace officer.

**{27}** The State claims, however, that *Reese* is distinguishable from the present case because, unlike the statutes at issue in *Reese*, Section 30-22-25 is not silent with respect to the element of mens rea. Section 30-22-25(A) explicitly provides that "[a]ggravated battery upon a peace officer consists of the unlawful touching or application of force to the person of a peace officer with *intent to injure* that peace officer while he is in the lawful discharge of his duties." (Emphasis added). Because the statute specifies one mental state, intent to injure, the State argues that it necessarily excludes a second mental state, knowledge of the victim's identity as a peace officer.

**{28}** The State's claim raises an issue of statutory construction, which we review de novo. "Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature. It is the high duty and responsibility of the judicial branch of government to facilitate and promote the [L]egislature's accomplishment of its purpose." *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citations omitted).

**{29}** It is well established that a single statute may require proof of different mental states for different elements of the crime and that these mental states need not be explicit. *See, e.g.*, *State v. Contreras*, 2007-NMCA-119, ¶ 17, 142 N.M. 518, 167 P.3d 966 (holding that the crime of breaking and entering has two different mental states for three different elements: (1) general intent to break and enter into a structure and (2) knowledge that the entry is unauthorized); *Gonzalez*, 2005-NMCA-031, ¶¶ 16, 23 (recognizing that the crime of bringing contraband into a jail has two different mental states for two different elements: (1) general intent to bring the item possessed into the jail and (2) knowledge that the item possessed is contraband). To determine whether an essential element of a crime requires criminal intent, "we may consider the mental state[s] ordinarily required for crimes of the same nature." *Id.* at ¶ 15 (internal quotation marks and citation omitted). Ultimately, we must determine whether there is a clear legislative intent to omit the mens rea requirement with respect to one or more essential elements of the crime. *Id.*

**{30}** As previously explained, knowledge of the victim's identity as a peace officer is an essential element of both aggravated assault upon a peace officer and battery upon a peace officer. *Reese*, 106 N.M. at 498-503, 745 P.2d at 1146-51. Aggravated battery upon a peace officer is similar to these crimes in that it is codified in the same statutory section, Chapter 30, Article 22, NMSA 1978, entitled "Interference with Law Enforcement," and is intended to achieve the same fundamental purpose: protect peace officers in the lawful discharge of their duties from unlawful assaults and batteries. Moreover, there is no clear intent on the part of the Legislature to omit a mens rea element with respect to the victim's identity as a peace officer and the punishment for the crime is severe; aggravated battery upon a peace officer is either a third degree felony or a fourth degree felony depending on the severity of the harm inflicted on the victim. *See* § 30-22-25(B)-(C). Like many of our sister states,

> we cannot see how imposing liability for [aggravated battery upon a peace officer] without also requiring knowledge of his identity could further the specific deterrent purpose expressed by the statute. Neither can we understand why an individual who commits an assault on a person he does not know to be an official is any more blameworthy than one who commits an assault . . . is thus any more deserving of the greater punishment for an offense of a higher class.

*Morey*, 427 A.2d at 484 (holding that knowledge of the victim's identity is an essential element of assault on a police officer); *see also Nelson v. United States*, 580 A.2d 114, 118-19 (D.C. App. 1990) (holding that knowledge of the victim's identity is an essential element of assault on a police officer while armed); *Thompson v. State*, 695 So. 2d 691, 692 (Fl. 1997) (holding that knowledge of the victim's identity is an essential element of attempted murder of a law enforcement officer). *But see State v. Compton*, 104 N.M. 683, 693, 726 P.2d 837, 847 (1986) (holding that knowledge of the victim's identity is not an essential element of NMSA 1978, Section 31-20A-5(A) (1981) because aggravating circumstances, which enhance the penalty for capital murder, are "*not* elements of capital murder" or "quasi-criminal violations in and of themselves"). We therefore conclude that the Legislature intended knowledge of the victim's identity as a peace officer to be an essential element of the crime.

**{31}** To ensure that the jury properly is instructed on the essential elements of aggravated battery upon a peace officer, we conclude that UJI 14-2212 through 14-2214 should be amended to reflect the requisite mental states attendant to the crime. *See State v. Wilson,* 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994) ("The Supreme Court will amend, modify, or abolish uniform jury instructions when such instructions are erroneous."). Accordingly, we hereby modify UJI 14-2212 through 14-2214 to include the following element: "Defendant knew _____ (*name of peace officer*) was a peace officer." Likewise, we hereby modify UJI 14-2211 (essential elements of battery upon a peace officer) and UJI 14-2201, 14-2202, 14-2203, 14-2204, 14-2205, 14-2206, and UJI 14-2210 (essential elements of

12

aggravated assault upon a peace officer) to reflect the requirement that: "Defendant knew _____ (*name of peace officer*) was a peace officer."

**{32}**   We stress that it is the defendant's mental state, rather than the victim's conduct, that is the touchstone of the knowledge requirement. However, "[b]ecause an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence." *State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 994 P.2d 728 (1999) (internal quotation marks and citation omitted). Such circumstantial evidence may include, but is not limited to, the fact that the victim was in full uniform, had a badge visibly displayed, was driving a marked police vehicle, or had identified himself or herself as a peace officer. Although these factors focus on the victim's conduct, we caution that Section 30-22-25 does not require the victim to be in full uniform or to otherwise identify himself or herself as a peace officer. *Compare* Section 30-22-25(A) ("Aggravated battery upon a peace officer consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while he is in the lawful discharge of his duties."), *with* Kan. Stat. Ann. § 21-3411(a)(1) (2004) ("Aggravated assault of a law enforcement officer is an aggravated assault . . . [c]ommitted against a *uniformed or properly identified* state, county or city law enforcement officer while such officer is engaged in the performance of such officer's duty." (emphasis added)). Accordingly, the victim's conduct may be sufficient, but certainly is not necessary, to prove the defendant's state of mind.

**1.      Whether Defendant was entitled to UJI 14-2116:  Mistake of Fact as to the victim's identity as a peace officer.**

**{33}**   We next address whether Defendant was entitled to UJI 14-2216, mistake of fact as to the victim's identity as a peace officer. "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

**{34}**   Ignorance or mistake as to a matter of fact or law is a defense

> if it negatives a mental state required to establish a material element of the crime, except that if the defendant would be guilty of another crime had the situation been as he believed, then he may be convicted of the offense of which he would be guilty had the situation been as he believed it to be.

1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6 (2d ed. 2003). Generally, a defendant is entitled to UJI 14-2216 when "there is a question of fact as to whether or not the defendant knew that the victim was a law enforcement officer"; UJI 14-2216 Use Note 1; and, consequently, the jury reasonably could find the defendant not guilty of the crime charged and/or guilty of certain lesser included offenses that do not require proof of the victim's identity as a peace officer. *See Nozie*, 2007-NMCA-131, ¶ 4 ("UJI 14-2216 requires the jury to acquit the defendant of the offense against a peace officer if the jury has a reasonable

13

doubt as to whether the defendant knew the victim was a peace officer. If the jury acquits the defendant due to a mistake as to the victim's status as a peace officer, UJI 14-2216 requires the jury to consider the parallel lesser-included offense not involving a peace officer as the victim.").

**{35}** We agree with the Court of Appeals that Defendant had tendered an appropriate mistake of fact instruction and that the evidence supported the issuance of this instruction because

> a reasonable jury could have found that Defendant was in a dazed, disoriented, and intoxicated state and that, in this state, he believed that the person he attacked in the lot was the private security guard who had followed him into the field from the supermarket parking lot. Defendant's theory of ignorance or mistake was supported by the State's own witnesses and, contrary to the argument of the prosecutor, did not depend upon Defendant taking the stand to directly deny knowledge. *See* [*State v.*] *Mantelli*, 2002-NMCA-033, ¶ 16, 131 N.M. 692, 42 P.3d 272 (observing that the State's evidence may support an instruction requested by the defendant); *State v. Castañeda*, 2001-NMCA-052, ¶ 21, 130 N.M. 679, 30 P.3d 368 (noting general rule that a defendant's state of mind may be proved by circumstantial evidence). That there are views of the evidence that support a finding adverse to Defendant is not a reason for denying Defendant an instruction so long as the evidence viewed most favorably to Defendant supported Defendant's theory of the case.

*Id.* at ¶ 10. Accordingly, the Court of Appeals properly determined that Defendant was entitled to the requested jury instruction.

**{36}** We caution, however, that "[o]rdinarily, a defendant is not entitled to a specific instruction where the jury has already been adequately instructed upon the matter by other instructions." *State v. Venegas*, 96 N.M. 61, 628 P.2d 306 (1981). In the present case, the jury was not instructed that knowledge of the victim's status as a peace officer is an essential element of the crime of aggravated battery upon a peace officer, which the State bears the burden to prove beyond a reasonable doubt. *See supra* part II.B. We therefore need not decide whether a mistake of fact instruction, when issued in conjunction with a proper instruction on the essential elements of the crime, would be cumulative or superfluous. *See State v. Bunce*, 116 N.M. 284, 287, 861 P.2d 965, 968 (1993) ("[T]he trial court need not give a mistake of fact instruction where the intent element of the crime is adequately defined by the other instructions given by the trial court."); *Venegas*, 96 N.M. at 62-63, 628 P.2d at 307-08 (holding that the defendant was not entitled to a mistake of fact instruction because such an instruction would be duplicative of other instructions); *State v. Sparks*, 102 N.M. 317, 324, 694 P.2d 1382, 1389 (Ct. App. 1985) ("[T]he trial court may properly refuse a requested instruction if it gives undue emphasis to the defendant's theory of the case."). We

14

refer this matter to the Uniform Jury Instruction Criminal Committee, however, to assess the continued validity of UJI-14-2216 in light of our modification of the Uniform Jury Instructions regarding the essential elements of aggravated battery upon a peace officer, battery upon a peace officer, and aggravated assault upon a peace officer.

**2.      Whether Defendant was entitled to UJI 14-320:  Battery as a lesser-included offense of aggravated battery upon a peace officer.**

**{37}**    We next address whether Defendant was entitled to an instruction on battery, UJI 14-320, as a lesser-included offense of aggravated battery upon a peace officer.

> Failure to instruct the jury on a lesser[-]included offense of a charged offense is reversible error if:  (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser[-]included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue.

*State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537 (2005).

**{38}**    As a preliminary matter, Defendant claims that this issue is unreviewable because it was not raised in the State's petition for writ of certiorari.  *See* Rule 12-502(C)(2)(b) NMRA ("[T]he Court will consider only the questions set forth in the petition.").  We are not persuaded.  In its petition, the State presented the following question for our review:  "Is subjective knowledge that the victim is a peace officer an element of the offense of aggravated battery on a peace officer, as defined in [Section 30-22-25]?"  We conclude that this question is broad enough to encompass the issue of whether battery is a lesser-included offense of aggravated battery upon a peace officer.  Indeed, our review of the Court of Appeals' opinion reveals that the two questions, subjective intent as an essential element of aggravated battery upon a peace officer and battery as a lesser-included offense of aggravated battery upon a peace officer, are inextricably intertwined.  *See Nozie*, 2007-NMCA-131, ¶ 4 (concluding that a defendant's subjective knowledge of the victim's identity as a peace officer is an element of the crime of aggravated battery upon a peace officer because "a number of the various assaults or batteries defined in Article 3 of the Criminal Code are 'included' offenses of parallel offenses against peace officers defined in Article 22 of the Criminal Code"); *id.* ¶ 12 (concluding that Defendant was entitled to an instruction on battery as a lesser-included offense of aggravated battery upon a peace officer in relevant part because there was sufficient evidence for the jury to find that "Defendant was mistaken as to the victim's identity as a peace officer").

**{39}**    Turning to the merits of the State's claim, we first address whether battery is a lesser-included offense of aggravated battery upon a peace officer.  "A lesser[-] included offense is one that includes some, but not all, of the elements of a greater offense and that does not

have any element not included in the greater offense, so that it is impossible to commit the greater offense without necessarily committing the lesser offense." *State v. Garcia*, 114 N.M. 269, 273, 837 P.2d 862, 866 (1992). Aggravated battery upon a peace officer, contrary to Section 30-22-25(A), "consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while he is in the lawful discharge of his duties." Battery, contrary to Section 30-3-4, consists of the "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." Aggravated battery upon a peace officer therefore requires the State to prove three essential elements that battery does not: (1) that the victim was a peace officer in the lawful discharge of his duties, (2) that the defendant knew the victim was a peace officer, and (3) that the defendant intended to injure the victim.

**{40}** We conclude that it is impossible to commit the crime of aggravated battery upon a peace officer without necessarily committing the crime of battery. First,

> [o]ne cannot commit battery with an intent to injure without also proceeding in a rude, insolent or angry manner. See the various definitions of "rude", "insolent" and "angry" in Webster's Third New International Dictionary (1966). The meaning of "rude" includes offensive in manner or action; the use of force. The meaning of "insolent" includes insult; contemptuous or brutal in behavior. The meaning of "angry" includes various forms of displeasure.

*State v. Kraul*, 90 N.M. 314, 316-17, 563 P.2d 108, 110-11 (Ct. App. 1977). Second, "[o]ne cannot batter a peace officer while in the lawful discharge of his duties without battering the person of another." *Id.* at 317, 563 P.2d at 111. Accordingly, we conclude that battery is a lesser-included offense of aggravated battery upon a peace officer.

**{41}** We agree with the Court of Appeals that Defendant had tendered an appropriate instruction regarding battery as a lesser included offense of aggravated battery upon a peace officer and that the facts supported the issuance of this instruction because

> [t]he district court instructed the jury on the question of Defendant's inability to form the specific intent to injure, UJI 14-5111 NMRA, indicating that the district court recognized that there was sufficient evidence of intoxication to support this defense. If the jury found that Defendant was unable to form the specific intent to injure, it still could have found that Defendant was able to form the general criminal intent necessary to commit battery. *See State v. Crespin*, 86 N.M. 689, 691, 526 P.2d 1282, 1284 (Ct.App. 1974) (observing that voluntary intoxication is not a defense to a "nonspecific" intent crime); *State v. Duran*, 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App. 1969) (distinguishing the intent to apply force required to commit battery from the intent to injure required to commit aggravated battery). If the jury found

16

both that Defendant was mistaken as to the victim's status as a peace officer and that Defendant was unable to form the specific intent to injure, it could have found Defendant guilty of battery.

*Nozie*, 2007-NMCA-131, ¶ 12. Accordingly, the Court of Appeals properly determined that Defendant was entitled to the requested jury instruction.

## III.    CONCLUSION

{42}    We conclude that a criminal defendant's knowledge of the victim's identity as a peace officer is an essential element of the crime of aggravated battery upon a peace officer, which the State is required to prove beyond a reasonable doubt. Accordingly, Defendant was entitled to jury instructions regarding mistake of fact as to the victim's identity as a peace officer and simple battery as a lesser included offense of aggravated battery upon a peace officer. We therefore reverse Defendant's conviction of aggravated battery upon a peace officer and remand for a new trial on that count.

{43}    **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for State v. Nozie, No. 30, 620**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-AO | Assault or Battery on a Peace Officer |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EO | Elements of Offense |

| | |
|---|---|
| CA-JI | Jury Instructions |
| CA-LO | Lesser Included Offense |
| CA-MF | Mistake of Fact |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-CJ | Criminal Jury Instructions |
| JI-MS | Modification of Jury Instructions |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |