This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40112**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ARSENIO JARAMILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Arsenio Jaramillo appeals his convictions of two counts of battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), and one count of breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981). Defendant challenges the sufficiency of the evidence supporting all counts. We affirm.

## BACKGROUND

**{2}** Defendant's arguments are based in the premise that all of the conduct underlying the criminal charges was inadvertent and resulted from balance issues due to the fact that one of Defendant's legs had been amputated. The following evidence was introduced at trial.

**{3}** Lydia Poyhonen and her daughter had just laid down for a nap in the bedroom of their apartment when Ms. Poyhonen heard a bang and felt her bed shake. She got out of bed to investigate and found a hole in her kitchen wall. A cart that had been sitting in front of the wall had been knocked forward, and a large piece of plaster was resting on top of it. She could see through the hole to the apartment next door and saw Defendant, her neighbor. She testified that Defendant's face was "in the hole," and he was sitting on the ground. She asked him what he was doing. He leaned forward and said, "Drugs."

**{4}** Ms. Poyhonen took her daughter and left the apartment. Once the two were in her truck, she called the police. The police entered Ms. Poyhonen's apartment, and one officer talked with Defendant through the hole in the wall. Defendant stuck his head through the hole in the wall to do so. Eventually, the officer convinced Defendant to go to his front door and let officers into his apartment.

**{5}** After entering Defendant's apartment, one officer saw a hammer near the hole in the wall. The officers continued to talk with him, asking why he had knocked the hole in the wall, and he said he was trying to save the ladies next door. The officers observed drug paraphernalia in Defendant's apartment.

**{6}** The officers arrested Defendant. One officer backed his police car up to the front door and opened the back door of the car. Defendant initially complied with the officers' instructions and appeared relatively placid, so two officers supported Defendant, one on each side, and they made their way to the car. However, Defendant's demeanor changed as they neared the police car. He raised his voice and pushed away from the car. The two officers on either side of Defendant testified that he grabbed at both officers' belts, where the officers' tasers and guns were. Defendant squeezed one officer's arm, resulting in a bruise. He pinched the inner thigh of another officer, causing pain. The interaction was recorded by two body cameras.

**{7}** Defendant was charged with and convicted of two counts of battery upon a peace officer and one count of breaking and entering.[1] He now appeals his convictions, challenging the sufficiency of the evidence on all counts.

## DISCUSSION

---

1Defendant was also charged with and convicted of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2019, amended 2022), but does not challenge this conviction on appeal. Defendant was also initially charged with resisting, evading or obstructing an officer, contrary to NMSA 1979, Section 30-22-1(D) (1981), possession of marijuana or synthetic cannabinoids, contrary to NMSA 1978, Section 30-31-23 (2019, amended 2021), and disorderly conduct, contrary to NMSA 1978, Section 30-20-1 (1967), but the State dismissed these charges before trial.

## I.  Battery Upon a Peace Officer

{8}     We first address Defendant's challenge to the sufficiency of the evidence supporting his convictions for battery upon a peace officer. He argues that he did not intend to harm the officers but instead, lost his balance as he was being escorted to the police car and was "grabbing at anything he could to regain his balance." As a result, Defendant maintains that he lacked the required intent and the evidence was therefore insufficient to support the first element of the crime: that Defendant "intentionally touched or applied force [to the peace officer] by grabbing or squeezing [the peace officer]." *See* UJI 14-2211 NMRA (stating the elements of battery upon a peace officer to include whether "[D]efendant intentionally touched or applied force to" a peace officer). Applying the well-settled standard of review for challenges to the sufficiency of the evidence set out in *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176, we conclude the evidence was sufficient to support Defendant's convictions on both counts.

{9}     Both parties acknowledge that battery upon a peace officer is a general intent crime. *See State v. Nozie*, 2007-NMCA-131, ¶ 12, 142 N.M. 626, 168 P.3d 756, *aff'd by* 2009-NMSC-018, ¶ 41, 146 N.M. 142, 207 P.3d 1119. The jury received a general intent instruction stating that general intent is when a person "purposely does an act which the law declares to be a crime." *See* UJI 14-141 NMRA. In other words, Defendant did not have to intend to harm the officers, he only had to intend to perform the actions: grabbing, pinching, and squeezing them. "[B]ecause an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence." *Nozie*, 2009-NMSC-018, ¶ 32 (internal quotation marks and citation omitted); *see also* UJI 14-141 (stating that "[w]hether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him]").

{10}    The jury received recordings from the officers' body cameras showing the entire interaction. They saw Defendant raise his voice and struggle with the officers, push away from the car, and lower his weight. They heard Defendant yelling and ignoring the officers' instructions for approximately three minutes, long enough to reasonably infer that Defendant's actions were not merely an involuntary reaction from a fear of falling and that Defendant had conscious intent to grab the officers.

{11}    Three officers testified and the jury had an opportunity to judge the credibility of their accounts. *See State v. Smith*, 2001-NMSC-004, ¶ 16, 130 N.M. 117, 19 P.3d 254 (explaining that it is the fact-finder that determines credibility). All three officers indicated that Defendant's demeanor suddenly changed from being cooperative to combative, and Defendant had attempted to shift his weight away from the car using his leg. They all agreed that Defendant did not appear to lose his balance and was intentionally attempting to escape the officers' control.

{12}    Defendant points to his own testimony as evidence that he had responded involuntarily during the arrest. He testified that the officers were making him move too

fast and claimed that he thought he was going to fall. Since he only has one leg, he stated that he "automatically pushed back and tried to get [his] center of balance." But when the officers responded, Defendant felt that he was being pushed in multiple directions, and even like he had been picked up off the ground and could fall at any moment.

**{13}**    On appeal, this Court affords deference to the jury's resolution of the parties' conflicting accounts. Having heard Defendant's explanation, we presume that the jury rejected it. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (noting that "the jury is free to reject [the d]efendant's version of the facts"). Viewing the evidence in the light most favorable to sustaining Defendant's convictions, a jury could reasonably conclude from the State's evidence that Defendant intended to grab and squeeze the officers. *See id.* We therefore hold that the evidence is sufficient to sustain Defendant's convictions for battery upon a peace officer.

## II.    Breaking and Entering

**{14}**    Defendant also challenges his conviction for breaking and entering, arguing that he did not enter Ms. Poyhonen's apartment. This argument is an attack on the sufficiency of the evidence supporting the first element of the crime, whether "[D]efendant entered the dwelling of Lydia Poyhonen without permission; the least intrusion constitutes an entry." *See* UJI 14-1410 NMRA (listing the elements for breaking and entering); *see also State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{15}**    Someone "enters" a dwelling when they make the "least intrusion." *State v. Holt*, 2016-NMSC-011, ¶ 19, 368 P.3d 409 (quoting UJI 14-1410). That intrusion may be as small as sliding a finger behind a window screen. *See Holt*, 2016-NMSC-011, ¶ 23. The intrusion can be accomplished by a tool; the intruder's body need not enter. *See State v. Tixier*, 1976-NMCA-054, ¶¶ 10-11, 89 N.M. 297, 551 P.2d 987 (finding entry even though there was "no evidence that any part of [the] defendant's body entered the store" because there was "a fair inference from the evidence that the instrument used to remove the piece of door" entered one-half inch into the store). Entry, like intent, can also be inferred from circumstantial evidence. *See State v. Lauderdale*, 1973-NMCA-035, ¶ 7, 85 N.M. 157, 509 P.2d 1352 (concluding sufficient circumstantial evidence supported a burglary conviction where the defendant was seen near the store after all businesses had closed, he ran from police, and dropped two bags with merchandise from the store).

**{16}**    At trial, the State introduced photographs of a cart in Ms. Poyhonen's kitchen that had been knocked away from the wall with a large piece of broken plaster laying on top of it. The jury also heard testimony from officers that there was a hammer near the hole on the defendant's side of the wall. From this, a rational jury could infer that Defendant made the hole using the hammer and that the hammer made an intrusion, no matter how slight, into Ms. Poyhonen's kitchen given the force necessary to make the hole and

move the cart. We therefore conclude the State presented sufficient circumstantial evidence to sustain Defendant's conviction for breaking and entering.

**{17}**    It is unclear from the briefing whether Defendant also raises a challenge regarding the lack of general intent to support the breaking and entering conviction. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). Nevertheless, the jury had enough evidence to infer general intent. There was a hammer by the hole, and Defendant's statements to officers that he was trying to save the ladies next door indicate some intent to create the hole. In addition, the hole was large (approximately 1 ½ by 2 feet), and the cart had been moved by a significant force. From this, a jury could reasonably conclude that the force necessary to create the hole was greater than a man simply falling into a wall, and therefore, Defendant intended to make the hole. We therefore conclude the State's evidence was sufficient to establish the element of intent.

**CONCLUSION**

**{18}**    For the reasons stated herein, we affirm.

**{19}    IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**