OPINION BOSSON, Justice. A jury convicted Aaron Ramos (Defendant) of the misdemeanor of violating an order of protection. Defendant appeals because he was refused a jury instruction that would have required the jury to find that he had “knowingly” violated the protection order. Our Court of Appeals upheld the district court’s decision not to give the “knowingly” instruction, noting the absence of any such word in the relevant statute and applying general principles of statutory construction. For the reasons that follow, we read the language and structure of the statute together with its legislative policy and purpose, and conclude that our Legislature could only have intended to make the crime a “knowing” violation. Accordingly, it was reversible error to deny Defendant’s requested instruction to that effect. We reverse and remand for a new trial consistent with this Opinion. BACKGROUND Andrea Reed, Defendant’s former girlfriend, obtained an ex parte temporary order of protection (the order) against Defendant on October 31, 2008. Her authority for the order was NMSA 1978, Section 40-13-4(A)(l) (2008) (“Upon the filing of a petition for order of protection, the court shall . . . immediately grant an ex parte temporary order of protection ... if there is probable cause from the specific facts shown by the affidavit or by the petition to give the judge reason to believe that an act of domestic abuse has occurred[.]”). Ms. Reed’s reason for obtaining the order is not entirely clear from the record, but it appears to involve Defendant having entered Ms. Reed’s home without her consent. Ms. Reed was apparently upset about this, and she and Defendant had a heated conversation in which Defendant allegedly stated, “What? You act like I’m gonna burn your house down.” Based on these events, Ms. Reed obtained the order. The order explicitly prohibited Defendant from going within 25 yards of Ms. Reed in a public place. The order also contained a provision prohibiting Ms. Reed from doing “any affirmative act the purpose or effect of which is to cause respondent to violate this order.” Regarding its enforcement, the order stated that “[i]f the respondent violates any part of this order, the respondent may be charged with a crime, arrested, held in contempt of court, fined or jailed.” A sheriffs deputy personally served Defendant with the order at his workplace. At this time, the deputy told Defendant to “just stay away from her.” Defendant testified that to him this meant, “don’t call her, don’t write her, don’t go to talk to her, or engage her.” In fact, Defendant was so confident of his understanding of what the order entailed that he failed to read its contents. Additionally, Defendant testified that he told the deputy when he received the order that this “[was] great, this is the best thing that could have happened.” When asked what he believed a protective order meant, Defendant replied that it meant to stay away from Ms. Reed. When asked why he did not read the order, Defendant stated that its meaning was “obvious, it’s a protective order.” Both Defendant and Ms. Reed are dance instructors and they would often go to a certain bar on Thursday nights to teach students how to dance in public with a live band. On Thursday, November 6, 2008, Defendant went to this bar intending to meet one of his students. Defendant arrived before his student and sat down at the bar and ordered a beer. As it turns out, Ms. Reed was also at this bar with her dance students, seated twelve to fifteen yards away from Defendant. Defendant testified that he did not see Ms. Reed when he arrived at the bar. After seeing Defendant, Ms. Reed approached the bouncer and told him about her protective order against Defendant and asked for his assistance. The bouncer alerted Defendant that Ms. Reed was in the bar and that she wanted him to leave. Defendant refused, stating, “that’s her problem, I am going to drink my beer.” According to Defendant, he also told the bouncer, “why can’t she leave, why do I need to leave?” and further, “why am I having to leave, I’m not even messing with anybody at all, I’m just here.” The bouncer informed Ms. Reed what Defendant had said. When the bouncer returned, he told Defendant that Ms. Reed was going to call the police. Defendant responded, “F— her, she can call the cops, I’m finishing my beer.” Nevertheless, when Defendant saw Ms. Reed on the telephone, he grabbed his jacket, announced, “I’m outta here,” and left for another bar across the street. All told, Defendant was at the bar for an estimated ten to fifteen minutes. Defendant was arrested shortly thereafter at the bar across the street for violation of the protective order pursuant to NMSA 1978, Section 40-13-6(D) (2008) (describing how a peace officer shall act once presented with probable cause to believe a restrained party has violated a protective order). The District Attorney charged Defendant with one count of violation of a temporary restraining order. Defendant’s trial occurred on March 25, 2009. There is no uniform jury instruction for a violation of a protective order. As such, Defendant proposed a jury instruction requiring the jury to find that he knowingly violated the order of protection, which the court denied. The jury found Defendant guilty, and he was sentenced to 364 days of incarceration based partially upon the court’s perception of his attitude, lack of remorse, and as the judge stated, that “[he] doesn’t get that what he does is wrong.” Defendant served 90 of those days in the Lincoln County Detention Center with credit for time served during his pre-sentence confinement and the remaining 270 days on probation. The Court of Appeals affirmed Defendant’s conviction in a memorandum opinion. State v. Ramos, No. 29,514, slip op. at 18 (N.M. Ct. App. Aug. 16, 2011). We granted certiorari to consider the proper mens rea requirement for the crime of violating a protective order. State v. Ramos, 2011-NMCERT-010, 289 P.3d 1254. Defendant preserved his objection by tendering a correct jury instruction at trial, and thus we review this appeal for reversible error. See State v. Benally, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (“The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error.”). DISCUSSION The Family Violence Protection Act, NMSA 1978, Sections 40-13-1 to -12 (1987) (as amended through 2010) contains the procedures for obtaining and enforcing protection orders. See §§ 40-13-3 through -6 (2008). Once a party has violated an order of protection, Section 40-13-6(D) states that “[a] peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated an order of protection that is issued pursuant to the Family Violence Protection Act . . . . ” Section 40-13-6(F) states: A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor and shall be sentenced in accordance with Section 31-19-1 NMSA 1978. Upon a second or subsequent conviction, an offender shall be sentenced to a jail term of not less than seventy-two consecutive hours that shall not be suspended, deferred or taken under advisement. The penalty for a misdemeanor is a jail term of less than one year, or payment of a fine of not more than $1000, or both. NMSA 1978, § 31-19-1(A) (1984). The statute does not specify any particular mental state or mens rea that a restrained party must demonstrate to be found guilty ofthis misdemeanor. See § 40-13-6 (D) & (F). The court gave the jury the following instruction regarding the elements of the offense: For you to find the Defendant guilty of violating a temporary order of protection as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime: 1. A temporary order of protection was filed in the District Court of Lincoln County, N.M. for Cause Number DV 08-87; 2. The temporary order of protection was valid on November 6, 2008; 3. The Defendant knew about the temporary order of protection; 4. The defendant violated the temporary order of protection; 5. This happened in New Mexico on or about the 6th day of November 2008. Defendant objected to this instruction, requesting that the jury be instructed that he must have “knowingly violated the order of protection” in order for the jury to find him guilty. (Emphasis added.) The district judge denied this request, reasoning that “knowingly” was not specified in Section 40-13-6. Instead of including the “knowingly” element in the instruction, the district judge granted Defendant’s alternative request to give the jury the general criminal intent instruction consistent with UJI 14-141 NMRA. The general criminal intent instruction provided: In addition to the other elements of Violation of Restraining Order, the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him. (Emphasis added). The Court of Appeals agreed with the district court, holding that Section 40-13-6(D) and (F) does not require a person to knowingly violate a restraining order. Ramos, No. 29,514, slip op. at 8. The Court focused on the language of the statute, reasoning that the Legislature knows how to include the word “knowingly” in a statute and that its omission from Section 40-13-6(D) and (F) was intentional. Ramos, slip op. at 9. The Court of Appeals held that the general intent instruction sufficed, “absent a specific mens rea requirement in Section 40-13-6(D), (F).” Id. at 10. For the reasons that follow, this is an accurate application of the law generally, but not, we believe, in the specific context of Section 40-13-6. The State argues that no intent instruction — neither general nor specific — was necessary, and we should treat violating an order of protection as a strict liability crime. We disagree. It is well settled that, “[wjhen a criminal statute is silent about whether a mens rea element is required, we do not assume that the [Ljegislature intended to enact a no-fault or strict liability crime.” Santillanes v. State, 115 N.M. 215, 218, 849 P.2d 358, 361 (1993). Rather, “we presume criminal intent as an essential element of the crime unless it is clear from the statute that the [L]egislature intended to omit the mens rea element.” Id.', see also State v. Gonzalez, 2005-NMCA-031, ¶ 12, 137 N.M. 107, 107 P.3d 547 (“Since at least 1917, we have followed the common law that where an act is prohibited and punishable as a crime, it is construed as also requiring the existence of a criminal intent.”). The State also urges us to consider the law regarding contempt of court proceedings. Because Defendant was not held in contempt of court, we decline to do so. Gonzalez is an instructive case. In that case, our Court of Appeals held that bringing contraband into a jail was not a strict liability crime, and the jury needed to be instructed that the accused had knowingly possessed contraband when he entered the jail. Gonzalez, 2005-NMCA-031, ¶¶ 1, 18. Like the Family Violence Protection Act, the criminal statute in Gonzalez was silent as to mental state. See id. ¶ 12; NMSA 1978, § 30-22-14(B) (1976). Like the case before us, the jury in Gonzalez was only given the general intent instruction. Gonzalez, 2005-NMCA-031, ¶ 7. Unlike the case before us, the accused did not request a “knowing” instruction. Id. ¶ 19. The State argued that this was a strict liability crime, but the Court of Appeals disagreed, concluding that this offense “lackfed] the essential characteristics of a strict liability defense. It is not in the nature of a regulatory measure prescribing conduct which seriously threatens public health or safety.” Id. ¶ 14. In determining whether the crime encompassed a mental state, the Court of Appeals considered what mental state was required for crimes of a similar nature. Id. ¶ 15. The Court of Appeals held that the general intent instruction was insufficient and the failure to give a “knowing” instruction amounted to fundamental error. Id. ¶ 26. We recognize that the Family Violence Protection Act is a civil statute without any separate formulation as a criminal statute and no expression of mens rea. See generally New Mexico Judicial Education Center, Inst, of Pub. Law, New Mexico Domestic Violence Benchbook, pp. 2-1 to 2-9 (University of New Mexico School of Law 2005) [hereinafter Benchbook]. But the Family Violence Protection Act is also a kind of hybrid, being both civil and criminal in consequence. The Legislature created the provisions regarding orders of protection in the Family Violence Protection Act to protect specific persons from domestic abuse and to deter future conduct of the other party. See generally §§ 40-13-1 through -7. Typically, violations of court orders are handled with contempt-of-court proceedings, which presumably could have been done here but was not. Yet, in its own terms, a violation of an order of protection can result in either civil or criminal penalties, and the party is specifically put on notice of that possibility.[1] See § 40-13-6 (D) & (F); § 40-13-5 (B) (“The order of protection shall contain a notice that violation of any provision of the order constitutes contempt of court and may result in a fine or imprisonment or both.”). When punished criminally, violating an order ofprotection does not fit comfortably within the norms of the ordinary criminal statute. A person can be convicted for doing a prohibited act, “even if the conduct that violates the order of protection would not otherwise be against the law.” Benchbook, supra, at p. 8-3. For example, in this case Defendant, being found within 25 yards ofMs. Reed, committed an act which “would not otherwise be against the law,” but for the protective order. This particular wrong resembles an act malum prohibitum — or an act which in its nature is not intrinsically wrong, except for “the fact that its commission is expressly forbidden by law.” State v. Taylor, 297 A.2d 216, 217 (N.J. Dist. Ct. 1972). This is not a crime malum in se — or a crime exhibiting an “evil mind,” such as an inherently immoral act like rape or murder. See Santillanes, 115 N.M. at 222, 849 P.2d at 365; see also Black’s Law Dictionary 1045 (9th ed. 2009). Unlike a malum in se criminal statute in which a person should know of inherently unlawful conduct and anticipate its consequences, a party restrained by a protective order has to be told that certain otherwise lawful conduct now constitutes a crime; i.e., going within 25 yards of the other party in a public place. Accordingly, the Legislature provided a mandatory notice provision in Section 40-13-6(A), instructing that all orders of protection “shall be personally served upon the restrained party, unless the restrained party or the restrained party’s attorney was present at the time the order was issued.” Mandatory service of the order of protection provides the restrained party with knowledge that certain actions will be considered criminal, even actions that would not otherwise be considered criminal in other circumstances. Thus notice, and the knowledge that comes with it, would seem to be an integral part of the crime and the legislative intent behind it. In other contexts, we have required a knowledge instruction when statutes are otherwise silent on a particular mental state regarding the identity of the victim. In State v. Nozie, 2009-NMSC-018, ¶ 30, 146 N.M. 142, 207 P.3d 1119, we held that knowledge that a victim was a peace officer was an essential element of the crime of aggravated battery on a peace officer. We reasoned that there was no clear legislative intent to omit this mens rea requirement from the statute and that imposing liability on someone who did not know the victim’s identity defeated the “ ‘specific deterrent purpose expressed by the statute.’ ” Id. (quoting State v. Morey, 427 A.2d 479, 483 (Me. 1981)). We also reasoned that the heightened punishment for battering a peace officer supported the knowledge requirement. Nozie, 2009-NMSC-018, ¶ 30; see also State v. Valino, 2012-NMCA-105, ¶¶ 15, 17, 287 P.3d 372 (holding that even though a statute contained no mental state regarding knowledge of the victim’s identity, knowledge that a victim is a health care worker is an essential element of the crime of battery on a health care worker). We can draw certain parallels here. First, as previously discussed, we see no clear legislative intent to omit any mens rea from Section 40-13-6(D) & (F). See Nozie, 2009-NMSC-018, ¶ 30. Second, just as knowledge of the victim’s identity was an essential element in both Nozie and Valino, here knowledge that a restrained party’s conduct is endangering or affecting a specific person — the protected party — is imperative. The deterrent purpose of the protective order could only be served by knowledge of who is being protected, just like the deterrent purpose of the battery on a peace officer statute. See id. Orders of protection are “powerful tool[s] to reduce violence against current or former intimates[,]” and orders of protection “play a critical role as part of a comprehensive plan designed to protect victims from continuing violence in the home.” Benchbook, supra, at pp. 2-1, 2-2. The need for a “knowing” violation is perhaps best illustrated by a common-sense example. The restraining order in this case prohibited Defendant from being in a public place within 25 yards of the protected party. Without knowledge being part of the crime, then a violation could occur, however innocently, at any public place such as a shopping center or an entertainment venue, without one party even being aware of the other’s presence. The general intent instruction given in this case requires only an intentional act — e.g., the act of going to a store — even though he may not know that his act is unlawful. Prosecution for that kind of a violation would not serve the deterrent purpose of the Family Violence Protection Act. See generally § 40-13-2(D) (defining domestic abuse to include protecting persons from physical harm, severe emotional distress, harassment, etc.). We acknowledge that the other “knowing” cases cited herein — Gonzalez, Nozzle, Valino — all derive from felonies, and the severity of the crime is one factor our courts have weighed in favor of requiring a knowing violation. In the case before us, of course, Defendant was convicted of a misdemeanor and sentenced to less than a year in jail. That said, we conclude that under the particular circumstances of this crime, a “knowing” violation is most consistent with the policy behind the Family Violence Protection Act and the intent of the Legislature.[2] A knowing violation in this instance required proof that the accused knew of (1) the protective order and (2) Ms. Reed’s presence within 25 yards in the same location. With respect to the first element — knowledge of the restraining order — a restrained party has knowledge of the order when he receives personal service of the order of protection. See Maso v. N.M. Taxation & Revenue Dep't, 2004-NMSC-028, ¶ 13, 136 N.M. 161, 96 P.3d 286 (“[Wjhere circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed.” (internal quotation marks and citation omitted)). At trial, some significance was made about the fact that Defendant did not actually read the details of the order and was therefore unaware of its 25-yard stipulation. The defense argued that because of this, the State presented no evidence that Defendant actually knew he had to stay 25 yards away from Ms. Reed. Defendant’s position borders on the frivolous. Defendant’s failure to read the contents of the order is no defense. See Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (“One who intentionally remains ignorant is chargeable in law with knowledge.” (internal quotation marks and citations omitted)). Therefore, knowledge of the contents of the order of protection was imputed to Defendant as a matter of law upon proof of service. To be clear, when we state that a party must knowingly violate an order of protection, we do not mean that the party must act with a conscious or wilful desire to defy the protective order. We mean only that in this context the general criminal intent instruction is not enough, because “general intent is only the intention to make the bodily movement which constitutes the act which the crime requires.” Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (2d ed. 2003), at 355 (internal quotation marks and citation omitted). Additionally, “[kjnowledge and intent are separate, not synonymous, elements.” State v. Hargrove, 108 N.M. 233, 236, 771 P.2d 166, 169 (1989) (holding that the general criminal intent instruction was not “sufficient to instruct the jury that knowledge of the prohibited blood relationship is an essential element of [the crime of] incest”). W e have previously set forth the two elements of knowledge — the protective order and the presence of the protected party within the protected zone — and the State need prove no more than that to sustain a conviction. Our interpretation of Section 40-13-6 (D) and (F) should not deter the State from enforcing orders of protection through criminal sanctions. For example, if a restrained party were to claim he did not knowingly violate an order of protection because he believed he was 30 yards away from the protected party instead of 25, that would be a question for the jury to determine, no different from similar offenses. In most cases, knowing that the prohibited party was within the protected zone of the protected party, at least after a warning, should be sufficient to prove a knowing violation. The District Court’s Rejection of the Requested Instruction Requires a New Trial The evidence in this case supports Defendant’s conviction under the instructions that were given. Defendant knew about the protective order based on personal service. For the purpose of determining whether there should be a new trial we evaluate the sufficiency of the evidence under the instructions given. We do not evaluate the sufficiency of the evidence for instructions that were not given to the jury. See State v. Dowling, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (“We review Defendant’s [sufficiency] claim under the erroneous instruction provided to the jury at trial.”). The issue of Defendant’s knowing violation will be a question for the jury to consider on remand. Defendant, like any accused, was fairly entitled to a jury instruction that accurately described the essential elements of the crime and what the State would have to prove for a conviction. Any accused is entitled to such an instruction even if he does not ask for it. See State v. Osborne, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (“[FJailure to instruct the jury on the essential elements of an offense constitutes fundamental error. Where fundamental error is involved, it is irrelevant that the defendant was responsible for the error by failing to object to an inadequate instruction^]”). And here, Defendant unquestionably did ask for the correct instruction. Because Defendant objected to the jury instruction tendered at trial, we review his conviction for reversible error. Benally, 2001-NMSC-033, ¶ 12. “A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error.” State v. Parish, 118 N.M. 39, 44, 878 P.2d 988, 993 (1994) (internal quotation marks and citations omitted). To determine if a defect in a jury instruction amounts to reversible error, we must determine whether a reasonable jury could have been confused or misdirected by the jury instruction. Id. at 42, 878 P.2d at 991 (“Reversible error arises if ... a reasonable juror would have been confused or misdirected.”). The general intent instruction given in this case could have confused and misdirected the jury notwithstanding the evidence of Defendant’s guilt. Under the facts of this case and the instructions given, the jury could have convicted Defendant on either of two theories. First, the jury could have convicted Defendant appropriately based on Defendant’s knowledge of the restraining order and knowledge of Ms. Reed’s presence. But the jury could also have convicted Defendant based on a lesser showing. The general intent instruction as given allowed the jury to convict for something far less — merely the intentional act of entering and staying at the bar, “even though he may not know that his act is unlawful.” We have no way of knowing what was in the jury’s mind because the instructions allowed for either. See Gonzalez, 2005-NMCA-031, ¶ 23 (holding that the general intent instruction “was not sufficient to instruct the jury that Defendant’s knowledge of the cocaine he brought into the Detention Center is an essential element [of the crime] ofbringing contraband into a jail”). Accordingly, failure to instruct the jury of a knowing violation constituted reversible error. Under the circumstances we have no choice but to reverse and remand for a new trial. Finally, consistent with this Opinion, we recognize that there should be a uniform jury instruction for this crime. We request that the rules committee develop a uniform jury instruction reflecting that a restrained party must knowingly violate an order of protection. CONCLUSION We reverse Defendant’s conviction of one count of violating an order of protection and remand for a new trial. IT IS SO ORDERED. RICHARD C. BOSSON, Justice WE CONCUR: EDWARD L. CHÁVEZ, Justice CHARLES W. DANIELS, Justice BARBARA J. VIGIL, Justice PETRA JIMENEZ MAES, Chief Justice (dissenting). The temporary order of protection standard Form 4-963 NMRA provides under “ENFORCEMENT OF ORDER” that “[i]f the respondent violates any part of this order, the respondent may be charged with a crime, arrested, held in contempt of court, fined or jailed.” The dissent claims that half of states nationwide do not impose a knowing requirement. But the law from various states differs so dramatically, a majority rule is difficult to discern. For instance, many of the states cited by the dissent impose a willful requirement, which we interpret to be a mental state at least as culpable as knowing. See, e.g., Wyo. Stat. Ann. § 35-21-105(c) (2008) (“The [protective] order shall contain notice that willful violation of any provision of the order constitutes a crime as defined by W.S. 6-4-404, can result in immediate arrest and may result in further punishment.” (emphasis added)); R.I. Gen. Laws Ann. § 12-29-4(a)(3) (2001). In other states, protective orders are structured in such a specific way that the accused cannot violate them with any less culpable mental state than knowing. See, e.g., Gerlack v. Roberts, 952 P.2d 84, 86-87 (Or. Ct. App. 1998) (holding that defendant’s coming within 150 feet of petitioner at a video store did not violate protective order because the video store was not specifically designated in the order). Our research indicates that at least one state cited by the dissent explicitly requires a knowing violation by statute. Ind. Code Ann. § 35-46-1-15.1 (as amended through 2010) (“A person who Icnowingly or intentionally violates: (1) a protective order to prevent domestic or family violence . . . commits invasion of privacy, a Class A misdemeanor.” (emphasis added)). Thus, we conclude that the views expressed in this opinion do reflect those of a number of our sister states that have grappled with similar issues.