This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 33,829**

**MELANIE HART-OMER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Appellate Defender
Albuquerque, NM

for Appellant

# MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

**{1}** Defendant Melanie Hart-Omer (Defendant) appeals her conviction of one count of violation of a protective order that prohibited her from contacting her then-husband, Boyd Omer (Omer). We affirm.

## BACKGROUND

**{2}** Defendant was convicted of one count of violation of a protective order after a bench trial in the metropolitan court. *See* NMSA 1978, § 40-13-6 (2013) (providing for protective orders, their duration, and penalties for violation). Among other things, the protective order stated that Defendant "shall not write to, talk to, visit or contact [Omer] in any way except through [Omer's] lawyer, if [Omer] has a lawyer." After the protective order was served, Defendant called and/or texted Omer several times.

**{3}** Three witnesses testified at trial: Omer, the couple's daughter (Daughter), and the attorney representing Defendant in divorce proceedings. Because Defendant conceded that a protective order had been properly issued, the testimony at trial focused on whether Defendant knew about the protective order and its prohibitions. Defendant's defense was that, although she had been personally handed the protective order, she had no opportunity to read it because her Daughter immediately snatched it out of her hands, ripped it up, and threw it away. Therefore, Defendant maintained, she did not knowingly violate the order's prohibitions.

{4}    Omer testified that he went to a public rodeo event in which Daughter was competing in order to serve Defendant with the protective order. He was accompanied by Chris Vigil, who handed the protective order, including a cover sheet, to Defendant. Omer took a photo of Defendant with some papers, which he said were the protective order and a cover sheet, in her hand. The photo was admitted into evidence. Omer testified that the cover sheet was labeled "order of protection" and had some court stamps on it, but the cover sheet was not admitted into evidence.

{5}    Daughter testified that within a minute after Vigil handed Defendant the papers, she grabbed them and tore them up, thinking they were divorce papers. She then threw them in the trash can and ran after Omer, yelling at him that she had "ripped up the divorce papers, and that she could [not] believe [that] he had come to just serve [Defendant] divorce papers, [she] thought he had [come] to see her compete and have [her] awards." Defendant's divorce attorney testified that he met with Defendant the day after the papers were served, that Defendant did not mention a protective order, and that he understood that Defendant thought she had been served with divorce papers.

{6}    Within an hour after the protective order was served on Defendant, Defendant called Omer and left him a voice mail message. Omer testified that when Defendant called him again the following day, he called the police and a deputy was sent to his house. The deputy called Defendant and told her there was a protective order in place.

3

Omer did not hear the conversation between the deputy and Defendant. Neither the deputy nor Defendant testified. Shortly after the deputy's call, Defendant called Omer and left a message, stating "[inaudible] just called and said you tried to serve me with a restraining order" and "I have no idea what the restraining order—I haven't seen it, it's never been in my hand, I've never read it [inaudible]."

{7}     The metropolitan court found Defendant guilty and sentenced Defendant to 364 days incarceration with 333 days suspended. Defendant appealed to the district court, which affirmed Defendant's conviction. Because this is a memorandum opinion and because the parties are familiar with the case, we reserve further discussion of the facts for our analysis of Defendant's arguments on appeal.

**DISCUSSION**

{8}     As a preliminary matter, we first address the State's argument that this Court lacks jurisdiction to hear Defendant's appeal because her right to one appeal was exhausted by the district court's on-record review of the metropolitan court's decision. As the State acknowledges, however, this issue was addressed in a relatively recent opinion by this Court, in which we held that "[NMSA 1978,] Section 34-5-8(A)(3) [(1983)] vests this Court with jurisdiction to hear appeals from a district court's on-record review of a metropolitan court decision, and that [NMSA 1978,] Section 39-3-3(A)(1) [(1972)] provides . . . a right to appeal to this Court and invoke that grant of jurisdiction." *State v. Carroll*, 2015-NMCA-033, ¶ 12, 346 P.3d 372, *cert. granted*,

4

2015-NMCERT-001, 350 P.3d 92. We therefore proceed to the merits of Defendant's arguments.

{9}    Defendant argues that the metropolitan court erred in three evidentiary rulings and that these errors together constitute cumulative error requiring reversal. She also asserts that the metropolitan court erred in not requiring the State to prove that she knowingly violated the protective order. Finally, she argues that the State failed to prove that she knew that telephone contact with Omer was prohibited. We address the evidentiary rulings first.

{10}    We review evidentiary rulings for an abuse of discretion. *State v. Lopez*, 2009-NMCA-044, ¶ 12, 146 N.M. 98, 206 P.3d 1003 ("We cannot say the [lower] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

{11}    Defendant first argues that Omer's testimony about the contents of the cover sheet accompanying the protective order was improperly admitted under Rules 11-1002 NMRA and 11-1004 NMRA of the New Mexico Rules of Evidence. Rule 11-1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." But Rule 11-1004(A), which "applies when the contents of a writing are at issue but the original document is not introduced into evidence[,]" *Lopez*, 2009-NMCA-044, ¶ 13, permits admission of "other evidence of the contents of a writing . . . if . . . all the originals are

lost or destroyed, and not by the proponent acting in bad faith." Rule 11-1004(A). Here, Daughter testified that she tore up all of the papers, including the cover sheet. Thus, the unavailability of the cover sheet is not attributable to the bad faith of either Defendant or the State. We note that in *Lopez*, this Court stated that the proponent of evidence about a writing is required to produce the original or explain why it is not available, and held that admission of testimony about the contents of a writing was reversible error where "the documents referred to by [the state's witness] were not introduced at trial, and the [s]tate provided no explanation as to availability of the documents." *Lopez*, 2009-NMCA-044, ¶ 14. The State did not argue at trial that Rule 11-1004(A) applied because the cover sheet was lost. Thus, it may have been error to admit testimony about the cover sheet in the absence of an explanation for its unavailability. Here, however, the cover sheet was first referred to by Defendant on cross-examination, when Defendant asked Omer whether there was a cover sheet and whether it was blank. On redirect, Omer described the cover sheet further and Defendant objected, stating that the writing was not in evidence. We decline to address this issue further because, even if testimony about the cover sheet were improper under Rules 11-1002 and 11-1004, Defendant elicited the first testimony about the cover sheet during cross-examination, and may have relied on it to rebut the State's contention that Defendant knew what the papers were after glancing at them. Having done so, Defendant cannot now argue that the testimony was erroneously

6

admitted. *Cf. State v. Bonham*, 1998-NMCA-178, ¶ 12, 126 N.M. 382, 970 P.2d 154 (stating that "[e]ven if admission of [objectionable] testimony was error, we will not now hear [the d]efendant complain about the error she invited"), *abrogated on other grounds by State v. Traeger*, 2001-NMSC-022, 130 N.M. 618, 29 P.3d 518; *State v. La Madrid*, 1997-NMCA-057, ¶ 17, 123 N.M. 463, 943 P.2d 110 (stating that the "[d]efendant cannot acquiesce in the admission of a hearsay statement when it appears to suit his purpose and then claim reversible error when the same statement is admitted later through another witness").

{12} Next, Defendant argues that the metropolitan court erred in refusing to allow testimony by Omer about what Daughter said to him after she took the papers from Defendant. Defendant asked Omer if it was true that Daughter yelled at him, "How dare you serve my mother divorce papers at my competition, I thought you came to see me." The court sustained the State's hearsay objection, rejecting Defendant's argument that the statement was admissible as an excited utterance. After Omer testified that Daughter was upset and ran after him yelling, Defendant asked Omer if he knew why Daughter was upset and if he based his opinion on what Daughter said to him. The court sustained the State's objection to this question on the ground that it called for speculation. On appeal, Defendant argues that this testimony should have been admitted as an excited utterance and as the factual basis for Omer's opinion about why Daughter was upset.

7

{13} We need not address these arguments about admissibility because we conclude that, even if the metropolitan court's rulings were erroneous, Defendant has not demonstrated reversible error. "For the court's error in excluding evidence to be prejudicial against [a d]efendant, improperly refused evidence must form an important part of [the d]efendant's case." *State v. Gonzales*, 1991-NMSC-075, ¶ 27, 112 N.M. 544, 817 P.2d 1186. "Moreover, to warrant reversible error in the exclusion of testimony, [the] defendant must show a reasonable probability that the court's failure to allow the testimony contributed to [her] conviction." *Id.* Defendant argues that "[w]hat [Daughter] said and did, . . . were facts relevant to the issue of what [Defendant] knew about the papers served to her." She contends that "[e]ven though [Daughter] testified about what she said and did, the defense case was unfairly prejudiced when the court precluded the defense from forcing [Omer] to admit . . . that [Daughter] yelled at him about divorce papers." We understand Defendant to be arguing that she was denied the opportunity to elicit corroborating testimony about what Daughter said. But Defendant presented testimony by her attorney that, in a meeting with Defendant the day after the papers were served, he understood that Defendant thought she had been served with divorce papers. In addition, the court heard recordings of two voice mails, recorded after Defendant had received the papers from Vigil, in which Defendant referred to divorce proceedings and divorce paperwork. In one of those recordings, Defendant stated explicitly that she did not

8

know about the protective order: "I have no idea what the restraining order—I haven't seen it, it's never been in my hand, I've never read it [inaudible]." Considering the totality of the circumstances surrounding the excluded testimony, we conclude that any error was harmless. *See State v. Tollardo*, 2012-NMSC-008, ¶ 43, 275 P.3d 110 (stating that a harmless error analysis involves "all of the circumstances surrounding the error").

{14}    Having concluded there was no reversible error in the metropolitan court's evidentiary rulings, we turn to Defendant's other arguments: that the metropolitan court misstated the mens rea requirements for violation of a protective order, and that there was insufficient evidence that Defendant knowingly violated the protective order.

{15}    Our analysis of the mens rea requirement for violation of a protective order depends in large part on the Supreme Court's decision in *State v. Ramos*, which was filed after the metropolitan court's decision. 2013-NMSC-031, ¶ 26, 305 P.3d 921. In *Ramos*, the defendant was personally served with a protective order prohibiting him from being within twenty-five yards of the protected party. *Id.* ¶¶ 3, 4. The defendant did not read the details of the protective order. *Id.* ¶ 27. The defendant went to a local bar and "[a]s it turn[ed] out, [the protected party] was also at th[e] bar[,] . . . seated twelve to fifteen yards away from [the d]efendant." *Id.* ¶ 5. The protected party called the police and the defendant was arrested for violating the protective order. *Id.* ¶¶ 7,

9

8. At trial, the defendant requested a jury instruction "requiring the jury to find that he *knowingly* violated the order of protection, which the [district] court denied." *Id.* ¶ 9.

{16}     On appeal, the Supreme Court reversed. *Id.* ¶ 35. It observed that, "[u]nlike a *malum in se* criminal statute in which a person should know of inherently unlawful conduct and anticipate its consequences, a party restrained by a protective order has to be told that certain otherwise lawful conduct now constitutes a crime; i.e., going within [twenty-five] yards of the other party in a public place." *Id.* ¶ 21. Mandatory service of a protective order, the Court went on, "provides the restrained party with knowledge that certain actions will be considered criminal[.]" *Id.* It concluded that the state was required to prove both that the defendant "knew of (1) the protective order and (2) [the protected party's] presence within [twenty-five] yards in the same location." *Id.* ¶ 26.

{17}     The Court rejected the defendant's argument that the first element was not met because he never actually read the protective order, stating that "a restrained party has knowledge of the order when he receives personal service of the order of protection[,]" even if he fails to read it. *Id.* ¶¶ 26, 27. It held that "knowledge of the contents of the order of protection was imputed to [the d]efendant as a matter of law upon proof of service." *Id.* ¶ 27. The Court's reasoning was based in part on *Maso v. State Taxation & Revenue Department*, in which the Court noted that "where

10

circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed." 2004-NMSC-028, ¶ 13, 136 N.M. 161, 96 P.3d 286 (internal quotation marks and citation omitted). As to the second element, it held that a new trial was required because the jury was not instructed that a conviction required proof that the defendant knew that the protected party was within twenty-five yards of him. *Ramos*, 2013-NMSC-031, ¶ 33.

{18}    Applying *Ramos* to the present matter, the State was required to prove that Defendant (1) knew of the protective order, and (2) knew that she was calling Omer, the protected party. Here, the metropolitan court, instead of addressing whether *knowledge* was a required element under the statute, held that Section 40-13-6 did not require proof of *intent* to violate the protective order. Although the metropolitan court was correct that the State was not required to show that Defendant "act[ed] with a conscious or wilful desire to defy the protective order[,]" *Ramos*, 2013-NMSC-031, ¶ 28, "knowledge and intent are separate, not synonymous, elements." *Id.* (alteration, internal quotation marks, and citation omitted). To the extent the metropolitan court conflated knowledge and intent in its ruling, it erred. Although it did not have the benefit of *Ramos* at the time, the metropolitan court misstated the proper standard for violation of a protective order.

11

{19} Nevertheless, we affirm because the metropolitan court properly imputed knowledge of the protective order and its contents to Defendant. We construe the court's finding that Defendant was properly served with the protective order as an indication that the court found that Defendant was sufficiently notified of the existence of the order to permit imputing knowledge of its contents to her under *Ramos* and *Maso*. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791 ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the [district] court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered." (internal quotation marks and citation omitted)).

{20} Defendant argues that knowledge of the protective order's contents should not be imputed to her because, unlike the defendant in *Ramos*, she did not intentionally fail to read the protective order, but instead could not read it or even identify the papers as a protective order because Daughter intervened. But Omer testified that Defendant was given the papers and that the cover sheet was labeled "order of protection" and had "court stamps" on it. The State presented a photo of Defendant looking at some papers while Vigil walked away from her, and Omer testified that the papers in the photo were the papers served on Defendant. An affidavit of service signed by Vigil was entered into evidence. "The duty to weigh the credibility of

12

witnesses and to resolve conflicts in the evidence lies with the [trial] court, not the appellate court." *Doughty v. Morris*, 1994-NMCA-019, ¶ 9, 117 N.M. 284, 871 P.2d 380. Here, the metropolitan court resolved the conflict in the evidence in the State's favor. We will not second guess the fact finder's assessment of the evidence. *State v. Sedillo*, 2001-NMCA-001, ¶ 6, 130 N.M. 98, 18 P.3d 1051 ("This Court does not weigh the evidence and may not substitute its judgment for that of the [trial] court.").

**{21}** Since we have concluded that knowledge of the protective order was properly imputed to Defendant, we need not address Defendant's argument that the State failed to prove that she knew she was prohibited from calling Omer.

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm Defendant's conviction.

**{23}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CYNTHIA A. FRY, Judge**