# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-040

Filing Date: April 7, 2020

No. A-1-CA-37066

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

DAVID RAEL,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
Mary L. Marlowe Sommer, District Judge

Certiorari Granted, June 5, 2020, No. S-1-SC-38300. Released for Publication October 5, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BOGARDUS, Judge.**

**{1}**    Defendant David Rael appeals from his conviction following a bench trial of one count of sexual exploitation of children (possession), contrary to NMSA 1978, Section 30-6A-3(A) (2007, amended 2016); one count of sexual exploitation of children (distribution), contrary to Section 30-6A-3(B); and three counts of sexual exploitation of

children (manufacture), contrary to Section 30-6A-3(D).[1] Defendant requests that we clarify what is necessary to convict for each of those crimes and also challenges the sufficiency of the evidence supporting each of his convictions. We accept Defendant's invitation to clarify what the State must prove to obtain a conviction for each crime. With that framework in place, we conclude that all of Defendant's convictions must be reversed due to insufficient evidence.

**BACKGROUND**

**{2}** At trial, Special Agent Owen Peña with the New Mexico Internet Crimes Against Children Task Force was qualified as an expert in peer-to-peer investigations. Agent Peña explained that he operates a program that searches peer-to-peer, file-sharing networks for internet protocol (IP) addresses geolocated in New Mexico that are willing to share files identified as sexual exploitation of children material (SECM).[2] The files are identified as SECM based on a database of known hash values, which are like fingerprints for each file.

**{3}** On June 23, 2013, Agent Peña testified that his program identified an IP address in New Mexico that was willing to share SECM. Agent Peña's program then made a connection to that IP address and was able to successfully complete a single-source download of one video containing SECM. This video was referred to at trial as "Black Gay Man" based on the video's title. Agent Peña's download of this file constituted the basis for Defendant's charge for sexual exploitation of children by distribution.

**{4}** After downloading that file, Agent Peña testified that he was able to determine that the IP address shared the video through DownloadHQ, a version of the Ares peer-to-peer, file-sharing program.[3] Agent Peña obtained a grand jury subpoena that allowed him to obtain subscriber information for the IP address from which he downloaded the SECM. He then forwarded that information to Commander Oliver Morris[4] with the Los Alamos Police Department.

**{5}** Commander Morris testified that the information obtained by Agent Peña identified the subscriber of the IP address as "David Rael" and provided a physical address associated with the IP address. Commander Morris testified that he obtained a

---

[1] All citations to Section 30-6A-3 in this opinion are to the 2007 amendment of the statute. However, we note that 2016 amendment recompiled the offenses to different locations within the statute, but the language defining each crime remained the same.

[2] In the past we have referred to SECM as "child pornography" and identified the crimes involved in this case as the possession, distribution, and manufacture of child pornography. However, with legal pornography becoming more ubiquitous and more culturally acceptable, we are mindful that using "pornography" could inadvertently normalize the possession, distribution, and manufacture of these materials to the detriment of victims. Accordingly, throughout this opinion, we use SECM and refer to the crimes as identified in Section 30-6A-3.

[3] Witnesses and trial counsel referred to DownloadHQ and Ares interchangeably. For clarity and consistency, we use DownloadHQ throughout this opinion.

[4] At the time that the subscriber information was sent to him, Mr. Morris was a Sergeant with the Los Alamos Police Department. At the time of trial, Mr. Morris was a Commander with the Los Alamos Police Department.

search warrant for the physical address, which he, Agent Peña, Special Agent Lance Fails, and Detective Daniel Roberts executed the day after it was issued. During the search, law enforcement seized a Gateway computer and a Toshiba external hard drive from Defendant's bedroom.

{6}     Agent Peña testified that, when the search warrant was executed, DownloadHQ was up and running on the Gateway computer and showed active searches for "teen sex" and "extreme sex." Agent Fails testified that he used OS Triage, a program that allows law enforcement to do an onsite, cursory preview of the data on a computer—in this case, the Gateway computer. Agent Peña testified that when OS Triage was looking for terms that may be related to SECM it found a keyword of "young."

{7}     During the investigation pursuant to the search warrant, Defendant agreed to be interviewed by Commander Morris and Agent Peña. Defendant was not under arrest at the time and signed a *Miranda* waiver form before agreeing to be questioned. The video-recorded interview was conducted at the Los Alamos Police Department. The video recording of Defendant's interview was admitted into evidence without objection.

{8}     Defendant admitted to the following during the interview: Defendant downloaded DownloadHQ between two years and two and one-half years before the interview. Defendant left his computer and DownloadHQ running all the time. Defendant understood that DownloadHQ shares files. DownloadHQ warned about downloading illegal files, and Defendant knew that SECM was illegal. Defendant used search terms on DownloadHQ that included "chick" or "hot chicks"; "sex"; "XXX movies" or "movies XXX"; "teen"; "Hustler magazine"; and "lingerie." Searches for "XXX movies" sometimes returned results that included SECM. Defendant described the beginning of two videos containing SECM that he had seen[5] but maintained that he would delete any SECM if and when he would see it. While he recalled seeing the name of the file referred to at trial as "KitKatClub," Defendant described the file as adult pornography. Defendant also admitted to using CCleaner, an anti-forensic program, daily to clean his computer's internet cache and registry.

{9}     After Defendant's interview and the execution of the search warrant, Defendant's Gateway computer and Toshiba external hard drive were taken to the Regional Computer Forensics Lab for forensic analysis. Qualified as an expert in computer forensics, Detective Christopher Brown, assigned to the Regional Computer Forensics Lab as a forensic examiner, testified regarding his examination of the hard drive of the Gateway computer and the Toshiba external hard drive.

{10}    Detective Brown testified that the video file referred to at trial as "Alicia" was found in two locations on the Toshiba external hard drive and each copy had a unique date of creation. Detective Brown then testified that the video referred to at trial as "LS" was found on the Toshiba external hard drive and artifacts of the video were also found on the hard drive from the Gateway computer. As to the video referred to at trial as

---

5Defendant's descriptions of the two videos matched the beginning of the videos referred to at trial as "LS" and "Alicia." Portions of both videos were played at trial.

"Kimmy," Detective Brown testified that it was found in two different locations on the Toshiba external hard drive and each copy had a unique date of creation. These videos constituted the basis for Defendant's three charges for sexual exploitation of children by manufacture.

**{11}** Detective Brown testified that he was unable to locate the "Black Gay Man" video that Agent Peña had downloaded on either the hard drive from the Gateway computer or the Toshiba external hard drive. Detective Brown explained that the file could have been deleted and overwritten or could have been deleted and an anti-forensic program run to remove traces of the file. Supporting Defendant's charge of sexual exploitation of children by possession, Detective Brown testified that he found the "KitKatClub" video on the hard drive from the Gateway computer.

**{12}** Detective Brown further testified that he found evidence indicating that the Gateway computer was Defendant's and that the Toshiba external hard drive had been connected to the Gateway computer at some point. Detective Brown testified that based on his analysis of the Windows Prefetch, CCleaner had been run many times, including recently. Detective Brown testified that CCleaner was set up to remove the search term history of a standard DownloadHQ install. Nevertheless, Detective Brown testified that he found many pornography search terms on Defendant's DownloadHQ software, including "XXX," "young cheerleaders," and "teen sex." Detective Brown testified that none of the search terms were specifically indicative of searches for SECM.

**{13}** Defendant moved for a directed verdict at the close of the State's case, arguing that the State had failed to provide sufficient evidence that he acted with the requisite intent. After hearing argument, the district court denied Defendant's motion. Defendant did not testify on his own behalf, but did call Steven Gary Burgess, who was qualified as an expert in computer forensics.

**{14}** Mr. Burgess testified that he used a number of forensic programs, programs from the Microsoft Office suite, and various media players to analyze the information on the hard drive of the Gateway computer and Toshiba external hard drive. Using those programs, Mr. Burgess testified that he was able to identify 11,000 DownloadHQ search terms that were initiated by the user of the Gateway computer. Mr. Burgess further testified that he was able to identify numerous other web browser searches outside of DownloadHQ. None of the search terms found on either DownloadHQ or the web browser matched any of the pedophilic search terms that Mr. Burgess searched for, which included the pedophilic terms contained in the names of the videos themselves.

**{15}** Mr. Burgess further testified that it is possible to download a bunch of files from DownloadHQ without knowing what is contained in the files. Mr. Burgess then testified that it is possible for a user to back up data in a similar process without selecting individual files. Mr. Burgess opined that it appeared that the instances where there were multiple copies of a video containing SECM, it was the result of backup procedures that did not require selection of individual files. Mr. Burgess testified that there was nothing

in his review to indicate that the videos that were the bases of Defendant's charges had been viewed.

**{16}** As to Defendant's use of CCleaner, Mr. Burgess testified that he did not find any evidence proving that CCleaner had been used since 2012. But, Mr. Burgess did testify that he saw a modification date during the morning that the police were executing the search warrant which lead him to opine that, if CCleaner had been used, it was while the police were present. Mr. Burgess further testified that the CCleaner on Defendant's computer was not set to securely delete data but rather to only delete data, which meant that the data should still have been recoverable until some other process overwrote it. Mr. Burgess testified that data tends to be persistent and might not be overwritten for years.

**{17}** The district court convicted Defendant of one count of sexual exploitation of children by possession, one count of sexual exploitation of children by distribution, and three counts of sexual exploitation of children by manufacture. Defendant appeals.

## DISCUSSION

**{18}** In this appeal, Defendant asks us to clarify our holdings in *State v. Knight*, 2019-NMCA-060, 450 P.3d 462, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37832, Sep. 13, 2019), and *State v. Franco*, 2019-NMCA-057, 450 P.3d 439, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37817, Aug. 8, 2019). Specifically, Defendant asks us to hold that *Knight* and *Franco* do not allow for convictions based on "volitional conduct that inadvertently results in the possession, distribution, or manufacture of [SECM]." To avoid any misinterpretation of *Knight* and *Franco*, we take this opportunity to explain what the State must prove in order to obtain convictions for sexual exploitation of children by possession, distribution, and manufacture. We then explain why our holdings in *Knight* and *Franco* are consistent with what the State must prove for those crimes. Finally, we explain why we agree with Defendant that his convictions must be reversed due to insufficient evidence that he acted with the requisite mens rea.

## I.     Standard of Review

**{19}** To the extent Defendant's argument requires us to interpret Section 30-6A-3, "that presents a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. Furthermore, "courts must try to adopt an interpretation that upholds the constitutionality of the statute." *State v. Ordunez*, 2012-NMSC-024, ¶ 14, 283 P.3d 282. "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *Chavez*, 2009-NMSC-035, ¶ 11.

**{20}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, an appellate court "views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (alteration, internal quotation marks, and citation omitted). We also disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before the reviewing court is not whether [it] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for [the fact-finder] to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted).

## II.      The State's Burden of Proof

**{21}**    Effective December 31, 2019, our Supreme Court adopted uniform jury instructions for the crimes of sexual exploitation of children by possession, distribution, and manufacture. *See* UJI 14-631 NMRA (identifying the essential elements of the crime of sexual exploitation of children by possession); UJI 14-632 NMRA (identifying the essential elements of the crime of sexual exploitation of children by distribution); UJI 14-633 NMRA (identifying the essential elements of the crime of sexual exploitation of children by manufacture). Although the uniform jury instructions were not available at the time this case was tried, they inform our analysis regarding the essential elements of the crimes at issue in this case.[6]

### A.      Sexual Exploitation of Children by Possession and Distribution

**{22}**    In order to obtain a conviction for the sexual exploitation of children by possession and distribution, the state must prove the following elements beyond a reasonable doubt:

1.      The defendant intentionally [possessed (as to UJI 14-631) or distributed (as to UJI 14-632)] a visual or print medium;

2.      The medium [depicts (as to UJI 14-631) or depicted (as to UJI 14-632)] a prohibited sexual act or simulation of such an act;

---

6As previously discussed, the 2007 amendment and the 2016 amendment to Section 30-6A-3 define the crimes of sexual exploitation of children by possession, distribution, and manufacture identically. Accordingly, the uniform jury instructions adopted in 2019 are equally informative under the 2007 amendment and the 2016 amendment.

3. The defendant knew or had reason to know that medium depicts [a] prohibited sexual act or simulation of such act;

4. The defendant knew or had reason to know that one or more of the participants in that act is a child under eighteen years of age;

5. The depictions are obscene; and

6. This happened in New Mexico on or about _____, 20__.

*See* UJI 14-631; UJI 14-632. The elements track the language of the statutes defining the two crimes. *See* § 30-6A-3(A) ("It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age."); § 30-6A-3(B) ("It is unlawful for a person to intentionally distribute any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.").

**{23}** Relevant to this appeal, the language contained in Section 30-6A-3(A), Section 30-6A-3(B), UJI 14-631, and UJI 14-632 establishes that a defendant must intentionally possess or distribute a visual or print medium while knowing or having reason to know that the visual or print medium (1) "depicts a prohibited sexual act or a simulation of such act" and (2) "one or more of the participants in that act is a child under eighteen years of age." Said another way, Section 30-6A-3(A), Section 30-6A-3(B), UJI 14-631, and UJI 14-632 require the State to prove beyond a reasonable doubt that (1) the defendant intentionally possessed or distributed a visual or print medium; and (2) the defendant knew or had reason to know that the visual or print medium contained SECM at the time he possessed or distributed it. *See State v. Nozie*, 2009-NMSC-018, ¶ 29, 146 N.M. 142, 207 P.3d 1119 ("It is well established that a single statute may require proof of different mental states for different elements of the crime[.]").

**{24}** Use note 2 to UJI 14-631 clarifies this further for the crime of sexual exploitation of children by possession because it directs the user to also give UJI 14-130 NMRA when the first element—intentional possession of a visual or print medium—is at issue. In relevant part, UJI 14-130 provides, "A person is in possession of _____ (*name of object*) when, on the occasion in question, *he knows what it is*, he knows it is on his person or in his presence and he exercises control over it." (Second emphasis added.)

**{25}** The requirement that a person knows or should have known that the visual or print medium contains SECM complies with the United States Supreme Court's holding that a defendant cannot be held criminally responsible for crimes involving SECM

"without some element of scienter on the part of the defendant." *New York v. Ferber*, 458 U.S. 747, 765 (1982). While "the United States Supreme Court has not established what level of scienter is required" for crimes involving SECM, our New Mexico Supreme Court has held that the scienter identified Section 30-6A-3(A)—"knows or has reason to know"—"is constitutionally sufficient." *State v. Adamo*, 2018-NMCA-013, ¶¶ 31, 34, 409 P.3d 1002. We see no reason to reach a different conclusion as to Section 30-6A-3(B), which contains a scienter requirement identical to that in Section 30-6A-3(A).

**B.    Sexual Exploitation of Children by Manufacture**

**{26}**    According to the adopted uniform jury instruction, the state must prove the following elements beyond a reasonable doubt in order to obtain a conviction for sexual exploitation of children by manufacture:

1.    The defendant intentionally manufactured a visual or print medium;

2.    The medium depicts a prohibited sexual act or a simulation of such act;

3.    One or more of the participants in that act is a child under eighteen (18) years of age;

4.    The depictions are obscene; and

5.    This happened in New Mexico on or about _____, 20__.

*See* UJI 14-633. The elements track the language of the statute defining the crime. *See* § 30-6A-3(D) ("It is unlawful for a person to intentionally manufacture any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age.").

**{27}**    Our Supreme Court has recognized that "[i]t is well established that a single statute may require proof of different mental states for different elements of the crime and that these mental states need not be explicit." *Nozie*, 2009-NMSC-018, ¶ 29. Here, the first element of Section 30-6A-3(A), (B), and (D), which defines the actus reus of each crime, all contain the same mens rea—"intentionally." *See* UJI 14-631; UJI 14-632; UJI 14-633. However, unlike the plain language of Section 30-6A-3(A) and Section 30-6A-3(B), the plain language of Section 30-6A-3(D) does not require that a person know or have reason to know that the visual or print medium depicts a prohibited sexual act or simulation of such an act or that that one or more participants in that act or simulation is a child under eighteen. Simply put, the plain language of Section 30-6A-3(D) does not provide *any* scienter requirement for the crime of sexual exploitation of children by manufacture. Therefore, we must determine whether our Legislature clearly intended to omit a scienter requirement for this offense. *See Nozie*, 2009-NMSC-018, ¶ 29 ("Ultimately, we must determine whether there is a clear legislative intent to omit the mens rea requirement with respect to one or more essential elements of the crime.").

**{28}** Our Legislature has demonstrated that it knows how to explicitly include scienter requirements for the crimes defined in Section 30-6A-3. *Compare* Section 30-6A-3(A), (B), (C), (E), (F) (including an explicit scienter requirement), *with* Section 30-6A-3(D) (omitting an explicit scienter requirement). Accordingly, its decision to not include a scienter requirement for the crime of sexual exploitation of children by manufacture could be an indication that the Legislature did not intend for Section 30-6A-3(D) to have a scienter requirement. However, we cannot say that its decision to not include an explicit scienter requirement in Section 30-6A-3(D) is equivalent to unambiguous " 'language negating a mental state.' " *Nozie*, 2009-NMSC-018, ¶ 26 (quoting *Reese v. State*, 1987-NMSC-079, ¶ 20, 106 N.M. 498, 745 P.2d 1146 (Ransom, J., specially concurring)). Accordingly, we must look to other indicia of legislative intent.

**{29}** A significant indicium is the severity of the punishment, and the punishment for the offense at issue is severe. Sexual exploitation of children by manufacture is a second degree felony that carried a basic sentence of nine years' imprisonment at the time of the alleged crimes in this case, NMSA 1978, § 31-18-15(A)(6) (2007, amended 2019), and currently carries a basic sentence of twelve years' imprisonment, Section 31-18-15(A)(6).[7] The severity of the punishment of this crime distinguishes it from "strict liability or public welfare crimes to which no moral condemnation and social opprobrium typically attach and for which the penalties are relatively slight." *Nozie*, 2009-NMSC-018, ¶ 26 (internal quotation marks and citation omitted); *State v. Gonzalez*, 2005-NMCA-031, ¶ 14, 137 N.M. 107, 107 P.3d 547 ("Strict liability crimes are the exception. They are generally recognized under statutes in the nature of regulatory measures and designed to proscribe conduct which seriously threatens public health or safety."). Accordingly, we conclude that our Legislature did not intend for punishment for the sexual exploitation of children by manufacture to be imposed without scienter as to either the depiction of a prohibited sexual act or simulation of such an act or as to the participation of a child under the age of eighteen. *See State v. Yarborough*, 1996-NMSC-068, ¶ 19, 122 N.M. 596, 930 P.2d 131 ("We must be sure that the penalties associated with a felony conviction are imposed only in response to an act done with at least the minimum culpable state of mind.").

**{30}** To reach the opposite conclusion—that it was the intent of our Legislature to punish a defendant who does not know or have reason to know of the content of the manufactured visual or print medium—would allow the most severe punishment of the crimes of sexual exploitation of children by possession, distribution, and manufacture to be associated with the least culpable mental state. Such a result would be absurd and unreasonable. *See Marshall*, 2004-NMCA-104, ¶ 7 (stating that we "giv[e] effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result").

---

[7]Compare these punishments with the punishments for the other crimes charged in this case: The sexual exploitation of children by possession, a fourth degree felony, carried a basic sentence of eighteen months' imprisonment at the time of the alleged crimes, Section 31-18-15(A)(10) (2007), and currently carries a basic sentence of ten years' imprisonment, Section 31-18-15(A)(12). The sexual exploitation of children by distribution, a third degree felony, carried a basic sentence of three years' imprisonment at the time of the alleged crimes, Section 31-18-15(A)(9) (2007), and currently carries a basic sentence of eleven years' imprisonment, Section 31-18-15(A)(10).

**{31}** Furthermore, Section 30-6A-3, "like obscenity statutes, present[s] a risk of self-censorship of constitutionally protected material." *Adamo*, 2018-NMCA-013, ¶ 29. To prevent such self-censorship, the United States Supreme Court has held that a defendant cannot be held criminally responsible for crimes involving SECM "without some element of scienter on the part of the defendant." *Ferber*, 458 U.S. at 765. Our conclusion that our Legislature did not intend to punish the sexual exploitation of children by manufacture without scienter as to the content of the manufactured visual or print medium comports with this constitutional mandate. *See Ordunez*, 2012-NMSC-024, ¶ 14 ("[C]ourts must try to adopt an interpretation that upholds the constitutionality of the statute.").

**{32}** For these reasons, we conclude that the crime of sexual exploitation of children by manufacture, like the crimes of sexual exploitation of children by possession and distribution, requires the State to prove scienter with respect to the content of the manufactured visual or print medium. Specifically, we hold that the State must prove the following elements beyond a reasonable doubt to obtain a conviction for sexual exploitation of children by manufacture:

1. The defendant intentionally manufactured a visual or print medium;

2. The medium depicts a prohibited sexual act or simulation of such an act;

3. The defendant knew or had reason to know that medium depicts a prohibited sexual act or simulation of such act;

4. The defendant knew or had reason to know that one or more of the participants in that act is a child under eighteen years of age;

5. The depictions are obscene; and

6. This happened in New Mexico on or about _____, 20__.

To require less would lead to an absurd and unreasonable result and impermissibly allow a defendant to be held criminally liable for the sexual exploitation of children by manufacture "without some element of scienter on the part of the defendant." *Ferber*, 458 U.S. at 765; *see Adamo*, 2018-NMCA-013, ¶¶ 31, 34 (holding that the scienter "knew or had reason to know" is constitutionally sufficient for sexual exploitation of children by possession).

### III.    Our Decisions in *Knight* and *Franco*

**{33}** Having identified what the State is required to prove for the crimes of sexual exploitation by possession, distribution, and manufacture, we discuss our holdings in *Knight* and *Franco*. In those cases, the defendants argued that this Court should conclude that general criminal intent was insufficient for the crimes of sexual

exploitation of children by possession, distribution, and manufacture. *Knight*, 2019-NMCA-060, ¶ 12; *Franco*, 2019-NMCA-057, ¶ 13. Instead, the defendants urged this Court to define the mens rea of "intentionally" as this Court had in *State v. Granillo*, 2016-NMCA-094, ¶ 21, 384 P.3d 1121 (holding "that the mens rea for intentional child abuse by endangerment requires a conscious objective to endanger a child"). *Knight*, 2019-NMCA-060, ¶ 12; *Franco*, 2019-NMCA-057, ¶ 13.

{34}   As made clear by the framework established in the previous sections, the defendant's challenges in *Knight* and *Franco* concerned only the first element of each crime—whether the defendant's conduct was intentional. Accordingly, we only addressed that first element when this Court held that the crimes of sexual exploitation of children by possession, distribution, and manufacture required only general criminal intent. *Knight*, 2019-NMCA-060, ¶ 14; *Franco*, 2019-NMCA-057, ¶ 16. For this reason, our opinions in *Knight* and *Franco* do not conflict with our holdings in this case, which specifically addresses the scienter required for two of the other elements of the crimes of sexual exploitation of children by possession, distribution, and manufacture. *See Nozie*, 2009-NMSC-018, ¶ 29 ("It is well established that a single statute may require proof of different mental states for different elements of the crime[.]").

{35}   As a final point, we note that the sufficiency of the evidence challenges in *Knight* and *Franco* were also confined to whether there was sufficient evidence of intentional conduct. *Knight*, 2019-NMCA-060, ¶ 24; *Franco*, 2019-NMCA-057, ¶ 21. For that reason, our analyses in *Knight* and *Franco* did not address whether there was sufficient evidence that defendants knew or had reason to know that the visual or print mediums that they possessed, distributed, or manufactured contained SECM. Nevertheless, as we explain next, the evidence presented in *Knight* and *Franco* was sufficient to demonstrate the requisite scienter.

{36}   In *Knight*, there was evidence that the defendant was familiar with known SECM search terms. 2019-NMCA-060, ¶ 17. The names of all of the files that law enforcement found on the defendant's computer contained the same SECM search terms that the defendant was familiar with. *Id.* In addition to the videos found on his computer, law enforcement found additional videos containing SECM on five different pieces of media, including DVDs and an external hard drive. *Id.* ¶ 23. The file names of the videos on the DVDs and external hard drive also contained the SECM search terms with which the defendant was familiar. *Id.* From the defendant's knowledge of SECM-specific search terms and his possession and manufacture of files with those same SECM-specific search terms in their file names, there was sufficient evidence for the fact-finder to conclude that the scienter requirement for the crimes of sexual exploitation of children by possession and manufacture was met.

{37}   In *Franco*, the defendant downloaded and used a peer-to-peer, file-sharing network to access SECM for over five years. 2019-NMCA-057, ¶ 21. The defendant used a network that required him to share in order to continue accessing files and kept files containing SECM in his shared file. *Id.* Because the defendant admitted to knowing that the files he distributed contained SECM, there was sufficient evidence for the fact-

finder to conclude that the scienter requirement for the crime of sexual exploitation of children by distribution was met.

**{38}** Based on the foregoing, we conclude that our opinions in *Knight* and *Franco* are consistent with the State's burden of proof, which we clarified in the previous sections of this opinion. Accordingly, it would be a misinterpretation of *Knight* and *Franco* to conclude that they allow for convictions based on "volitional conduct that inadvertently results in the possession, distribution, or manufacture of [SECM]."

## IV.     Defendant's Sufficiency of the Evidence Challenges

**{39}** Defendant challenges the sufficiency of the evidence that he acted with the mens rea necessary to convict him of sexual exploitation of children by possession, distribution, and manufacture. Additionally, Defendant argues that there was insufficient evidence that he completed the actus reus as to one of his convictions for sexual exploitation of children by manufacture. Because we agree with Defendant's mens rea arguments, we do not address his actus reus arguments.

**{40}** We note that at trial and in this appeal, the State simply recited all of the evidence that was relevant to Defendant's intent generally rather than his intent as to each count, each of which was supported by a separate video.[8] However, as we explained in the previous section, the crimes Defendant was convicted of, in relevant part, require proof beyond a reasonable doubt that Defendant (1) intentionally possessed, distributed, or manufactured a visual or print medium; and (2) knew or had reason to know that the possessed, distributed, or manufactured visual or print medium contained SECM. Because each crime is supported by a distinct video, we must complete our analysis by considering each video separately.

### A.     We Reverse Defendant's Conviction for Sexual Exploitation of Children by Possession for Insufficient Evidence That He Knew or Had Reason to Know That the Video Supporting His Conviction Contained SECM

**{41}** Defendant's conviction for sexual exploitation of children by possession was based on the "KitKatClub" video, which was found on Defendant's Gateway computer's hard drive. The video's full title contained "XXX," which is a portion of two of the search terms that Defendant admitted to using, and "extreme," which is a portion of one of the searches that was active when law enforcement executed the search warrant. Neither of these search terms are specific to SECM.

**{42}** While Defendant admitted that searches for "XXX movies" sometimes returned results that included SECM, knowledge that a search can result in the download of SECM is not the same as demonstrating that Defendant knew or had reason to know

---

8Within this general argument, the State contends, as it did at trial, that the Defendant's use of CCleaner should factor into our analysis. While the fact-finder may have inferred consciousness of guilt from Defendant's use of CCleaner, such an inference does not overcome the insufficiencies in the evidence that we identify below. Therefore, we do not further address Defendant's use of CCleaner.

that the "KitKatClub" video contained SECM when he possessed it. Said another way, knowing that a search term *could* return SECM is different than knowing a search *will* return SECM, as would be the case when a person knows a SECM-specific search term and uses it. The latter supports an inference that the person knew or had reason to know the content of the material they downloaded because of the SECM-specific search; the former does not. Finally, Defendant's knowledge of the name but not the content of this file is also insufficient to prove beyond a reasonable doubt that Defendant knew or had reason to know that the "KitKatClub" video contained SECM when he possessed it because the full title of this video did not contain information suggesting that it depicted an underage person as a participant in a prohibited sexual act.

{43}     For these reasons, we reverse Defendant's conviction for sexual exploitation of children by possession for insufficient evidence that Defendant had the requisite scienter; that is, there was insufficient evidence that he knew or had reason to know that the "KitKat Club" video contained SECM when he possessed it.

**B.     We Reverse Defendant's Conviction for Sexual Exploitation of Children by Distribution for Insufficient Evidence That He Knew or Had Reason to Know That the Video Supporting His Conviction Contained SECM**

{44}     Defendant's conviction for sexual exploitation of children by distribution was based on the "Black Gay Man" video, which Agent Peña was able to download from the IP address later traced to Defendant. None of the search terms that Defendant admitted using nor the terms that were actively being searched when law enforcement executed the search warrant were found in the full title of the "Black Gay Man" video. While the full title to the "Black Gay Man" video suggests that it depicts an underage person as a participant in a prohibited sexual act, the State did not present any evidence that Defendant was familiar with the video's full title or content when he distributed it. Therefore, in the absence evidence suggesting that he knew or had reason to know that the "Black Gay Man" video contained SECM at the time he distributed it, we must reverse Defendant's conviction for sexual exploitation of children by distribution.

**C.     We Reverse Defendant's Convictions for Sexual Exploitation of Children by Manufacture for Insufficient Evidence That He Knew or Had Reason to Know That the Videos Supporting His Convictions Contained SECM**

{45}     Defendant's convictions for sexual exploitation of children by manufacture were based on three separate videos: "Alicia," "LS," and "Kimmy." Assuming without deciding that there was sufficient evidence that each video was copied, we conclude that there was insufficient evidence that Defendant knew or had reason to know that each video contained SECM when the copies were made.

{46}     In his interview with law enforcement, Defendant described seeing two videos containing SECM but reported deleting them when he saw them. Defendant's descriptions of the beginning of those two videos matched with portions of the "Alicia"

and "LS" videos that were played at trial. While this evidence could support an inference that Defendant knew or had reason to know that the "Alicia" and "LS" videos contained SECM at some point, it does not indicate that Defendant had such knowledge at the time that he completed the manufacture by copy. Instead, under those facts, the fact-finder was left with two possible inferences: (1) that Defendant knew or had reason to know that the videos contained SECM because he had viewed them before he copied the videos; or (2) after he copied the videos, Defendant subsequently knew or had reason to know that the videos contained SECM because he viewed them.

**{47}** Only the first inference would support Defendant's convictions for sexual exploitation of children by manufacture as to the "Alicia" and "LS" videos. However, "evidence equally consistent with two inferences does not, without more, provide a basis for adopting either one—especially beyond a reasonable doubt." *State v. Garcia*, 1992-NMSC-048, ¶ 32, 114 N.M. 269, 837 P.2d 862. Therefore, we must determine whether the State presented evidence that makes the first inference more plausible.

**{48}** There was no evidence that any of the search terms Defendant admitted to using or the search terms that were active when law enforcement executed the search warrant were contained in the full title of the "Alicia" video. The full title of the "LS" video did contain "lingerie," which was one of the search terms Defendant admitted using, and "magazine," which was a portion of another search term that Defendant admitted to using. However, neither search term is specific to SECM. Therefore, even if Defendant knew that searches using those terms could result in the download of SECM, that, again, is not the same as demonstrating that the defendant knew or had reason to know that this video contained SECM when he manufactured it.

**{49}** Furthermore, while the full title of the "Alicia" is suggestive of incest, it does not contain any suggestion that it depicts an underage person as a participant in a prohibited sexual act. Conversely, the full title of the "LS" video suggests the video depicts an underage person as a participant in a prohibited sexual act. However, the State did not present any evidence that Defendant was familiar with the title or content of the "LS" video when he copied it. Because the State did not present any evidence making it more plausible that Defendant knew or had reason to know that the "Alicia" and "LS" videos contained SECM at the time he copied them, we must reverse Defendant's convictions for sexual exploitation of children by manufacture that were based on those videos. *See id.*

**{50}** Unlike the "Alicia" and "LS" videos, Defendant did not make any admissions that related specifically to the "Kimmy" video. The full title of the "Kimmy" video did not contain any of the search terms that Defendant admitted to using or those that were active when the search warrant was executed. The full title of the "Kimmy" video does suggest that it depicts an underage person as a participant in a prohibited sexual act. However, the State again did not present any evidence that Defendant was familiar with the title or the content of the "Kimmy" video when he copied it. Therefore, in the absence of any evidence that Defendant knew or had reason to know that the "Kimmy"

video contained SECM at the time that he copied it, we must also reverse his conviction for sexual exploitation of children by manufacture that was based on that video.

**CONCLUSION**

**{51}** We reverse Defendant's convictions of one count of sexual exploitation of children by possession, one count of sexual exploitation of children by distribution, and three counts of sexual exploitation of children by manufacture.

**{52}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**ZACHARY A. IVES, Judge**